

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

May 3, 2022

**BY ECF**

The Honorable Nelson S. Román
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      **Re:**    *United States v. Mordechay Malka, Matityau Malka*, **S3 19 Cr. 497 (NSR)**

Dear Judge Román:

    As instructed by the Court (*see* Dkt. No. 580), the Government respectfully submits this letter in advance of the bail hearing scheduled for May 4, 2022, and in response to the defendants' request that they be allowed to call five witnesses, play ten audio tapes, play five videos, and display an unidentified number of photographs and documents during the hearing. The Court should deny the defendants' request to turn the bail hearing into a mini-trial, just two weeks before the actual trial is scheduled to begin. As Judge Krause correctly concluded, the Court can rule on disputed issues without a mini-trial on the merits of the case, and nothing in the Bail Reform Act requires the Court to permit the calling of witnesses or the lengthy presentation of videos and audio recordings in this instance.

    On the merits, the Government's position on bail remains the same as it has been for many months: the Government is willing to consent to bail as long as certain conditions are in place to ensure the defendants' appearance in court and the safety of the community, and as long as the defendants agree to abide by those conditions. The conditions proposed by the Government are necessary because the defendants are Guatemala residents that participated in a conspiracy to kidnap two children and bring them out of the country, and because they continue to believe that removing those kids from their mother and returning them to Lev Tahor was and is the right thing to do. The defendants have made clear, both before Your Honor and before Judge Krause, that they will not agree to follow some of the proposed conditions. If the defendants will not agree to follow conditions set by the Court, they should not be released on bail.

    **I.**    **Background and Procedural History**

    As the Court knows, the defendants are members of an ultra-Orthodox Jewish sect called Lev Tahor. The defendants and others conspired, from at least December 2018 up to and including March 2021, to kidnap children from New York and remove them from the United States.

As discussed further below, the co-conspirators successfully kidnapped two children (the "Victims") from New York in December 2018 (the "December Kidnapping"). After a weeks-long manhunt by law enforcement, the Victims were found in Mexico (with Matityau Malka and other members of Lev Tahor) and returned to their mother (the "Mother"). Four of the defendants' co-conspirators were arrested in December 2018 as a result of the December Kidnapping. At the time of the December 2018 kidnapping, Lev Tahor leadership was seeking asylum for the entire Lev Tahor community in the Islamic Republic of Iran.

Unfortunately, the members of the conspiracy were undeterred. In March 2019, approximately three months after the Victims were recovered in Mexico, Matityau Malka and at least two co-conspirators attempted to kidnap one of the Victims a second time (the "March 2019 Attempted Kidnapping"). Thankfully, the efforts were thwarted by law enforcement and Matityau was subsequently arrested. Two years later, in or about March 2021, another co-conspirator and Lev Tahor member attempted to kidnap the Victims a third time.

### a. Lev Tahor

Lev Tahor is comprised of approximately 250 members and, as of 2018 and 2019, was based in Guatemala. The sect was founded in the 1980s by Shlomo Helbrans, who led the group until his death in 2017. Following his death, defendant Nachman Helbrans ("Helbrans"), the son of Shlomo Helbrans, became Lev Tahor's new leader. Helbrans and several other leaders managed the operational affairs of the community and controlled every aspect of the lives of Lev Tahor's adherents. In addition, Lev Tahor's leadership enlisted members of the community for specific tasks, including the kidnapping of the Victims in this case.

In approximately October 2018, the Mother, who is Helbrans' sister, determined that it was no longer safe for her children to remain under the authority of her brother. She escaped from the group's compound in Guatemala and—with the help of U.S. authorities—arrived in the United States in early November 2018. On or about November 14, 2018, a Temporary Order of Custody and a Temporary Order of Protection were issued in Kings County Family Court granting the Mother temporary custody of all six children, including a 14-year-old girl ("Victim-1") and her 12-year-old brother ("Victim-2"). Those orders also prohibited Aaron Teller, the children's father and a leader within Lev Tahor, from having any communication with the children.

### b. The December Kidnapping

After the Mother fled with her children and settled in New York, Helbrans, Mordechay Malka, and other co-conspirators devised a plan to return the Victims to Lev Tahor. In the days and weeks before the abduction, Helbrans, Mordechay, and their co-conspirators took several preparatory steps to ensure its success including, among other things: (1) bringing Victim-1 a cellphone so that the kidnappers could communicate with her; (2) traveling to the United States and/or Mexico from Guatemala; (3) renting a car to use during the kidnapping; (4) purchasing secular clothing to use as disguises for themselves and the Victims; (5) purchasing cellphones to use only for kidnapping-related matters; (6) conducting multiple meetings and phone/text conversations about the logistics of the kidnapping; (7) transferring money amongst themselves to help fund the kidnapping; (8) purchasing flights for themselves and the Victims to be able to leave

the country, and (9) obtaining Helbrans' children's passports for the Victims to use to get out of the United States undetected.

At approximately 3 a.m. on December 8, 2018, Helbrans, Mordechay, and their co-conspirators executed on their plan: the defendants kidnapped the Victims from a home in Woodridge, New York (the "Residence"). After they had the Victims out of the Residence, the kidnappers gave the Victims a change of clothes and took them to an airport. Mordechay drove the car from Woodridge to the airport, where he dropped off Helbrans and the Victims. Helbrans then flew with the Victims (fraudulently using his own children's passports) to Mexico. His co-conspirators, including Mordechay, took a variety of different routes out of the United States to Mexico.

Once in Mexico, the kidnappers transported the Victims to several hotels and residences. During this period, the kidnappers sought and received logistical help from members of Lev Tahor in the United States, Mexico, and Guatemala. On or about December 18, 2018, Mexican law enforcement raided what appeared to be a Lev Tahor safe house in San Miguel Tlaixpan, Mexico and detained Helbrans, Matityau Malka, and two of the co-conspirators. While they were not found by Mexican authorities at that time, the Victims were in the same residence at the time of the raid by Mexican authorities but were hiding in a closet. Matityau, a United States citizen, and the other detained individuals were subsequently deported to the United States. Upon arrival in the United States, three of the defendants' co-defendants were taken into custody on charges relating to the December Kidnapping.[1]

Finally, on December 27, 2018, after a three-week search involving scores of local, federal, and international law enforcement entities, the Victims were recovered in a hotel in Mexico. At the time, they were accompanied by defendants Shmiel and Yoil Weingarten. Ultimately, it appears that Mexico was only a way station for a longer journey: the Government subsequently recovered a document from defendant Shmiel Weingarten's email account—sent two days after the kidnapping of the Victims—declaring the group's "loyalty and submission to the Supreme Leader and Government of the Islamic Republic of Iran" and seeking asylum for the entire Lev Tahor community in Iran.

### c. The March Attempted Kidnapping

In March 2019, approximately three months after the arrest of his co-conspirators for the December Kidnapping, Matityau—along with an incarcerated Helbrans, defendant Yakov Weingarten, and others—attempted to kidnap Victim-1 a second time (the "March Attempted Kidnapping"). During this attempt, Matityau approached Victim-1, who was living with her Mother in Brooklyn, on multiple occasions. During these encounters, the defendant provided Victim-1 with cellular telephones so that she could communicate with the kidnappers.

---

[1] Although he was detained by Mexican authorities and deported to the United States in December 2018, Matityau was not charged by our Office until the attempted kidnapping of Victim-1 in March 2019, as described further below.

Victim-1 used these phones to communicate with defendant Yakov Weingarten, the acting head of the community following Helbrans' incarceration in December 2018. Those discussions included plans to remove Victim-1 from New York in a similar manner as the December 2018 Kidnapping. Yakov Weingarten also spoke with the Mother about the co-conspirators' plans to kidnap Victim-1 again, and threatened her by insisting that their efforts to return the Victims to Lev Tahor would not end until they were successful. Additionally, during a call from Westchester County Jail in March 2019, Helbrans told the Mother that he would take the children away from her.

### d. The Defendants' Arrests

On March 26, 2019, in the midst of the March Kidnapping Attempt, Matityau was arrested in Brooklyn, New York. It was only after Matityau was arrested that the threat to Victim-1 appeared to subside (for the time being). Matityau has been detained since March 2019.

Mordechay Malka was arrested on July 30, 2019, and has since been detained on consent.

### e. March 2021 Attempted Kidnapping

Approximately one year ago, in or about March 2021, another co-conspirator and Lev Tahor member approached the Victims in New York and attempted to kidnap them once again. *See* S3 Superseding Indictment ¶ 16. The co-conspirator possessed three bus tickets from New York to Georgia, drop phones, children's clothing, and birth certificates for two children of ages similar to the Victims. *See id.* By late March 2021, the co-conspirator had returned to the Lev Tahor compound in Guatemala.

### f. Trial, Conviction, and Sentencing of Co-Conspirators

In October and November of 2021, co-defendants Nachman Helbrans and Mayer Rosner were tried before Your Honor. On November 10, 2021, the jury found Helbrans and Rosner guilty on all counts of the Indictment, including (for Helbrans) the count related to the March 2019 Attempted Kidnapping. On March 31, 2022, Your Honor sentenced both Helbrans and Rosner to 12 years' imprisonment, followed by five years' supervised release.

### g. Prior Bail Applications

Matityau Malka has moved for release on bail on three prior occasions.[2] Matityau first moved for bail in February 2021. On February 3, 2021, the Government submitted a letter arguing that Matityau should remain detained because he presents a danger to the community and a risk of flight. *See* Ex. A (Dkt. No. 162). In short, the Government noted that (1) Matityau conspired with others to take two children away from their mother and out of the United States in direct contravention of a court order; (2) given that Matityau was found by Mexican authorities in the house where his co-conspirators were hiding the Victims, he was well aware of the earlier

---

[2] In contrast, Mordechay Malka made his first bail application before Judge Krause on April 19, 2022.

kidnapping and law enforcement's efforts to return the Victims to the Mother, yet he still chose to be the boots on the ground for the March 2019 Attempted Kidnapping; (3) Matityau was willing to openly defy the Kings County Family Court order granting the Mother custody of the Victims, even after he had been deported from Mexico; (4) Matityau was a Guatemala resident who spent most of his life outside the United States, and appears to have no meaningful ties to the United States; (5) Lev Tahor has a broad international presence, which includes operations and/or allies in the United States, Guatemala, Canada, Israel, Mexico, and Europe, meaning that Matityau has a vast network to call upon if he were to attempt to flee; and (6) Lev Tahor members, including Matityau's co-conspirators, have demonstrated an ability to cross borders without a trace or record—including with the Victims in tow. *See id.* at 4-6.

At a bail hearing on February 18, 2021, Judge McCarthy denied Matityau's bail request, concluding that he posed both a risk of flight and a danger to the community.

In the subsequent months, the Government engaged in extensive conversations with Matityau's standby counsel in an attempt to reach an agreement regarding conditions under which Matityau could be released on bail. Based on the Government's understanding of Matityau's position (as communicated through standby counsel), the parties were able to agree on various conditions, but could not reach agreement on two particular conditions. As the Government explained in an October 11, 2021 letter (attached as Exhibit B), the parties agreed on the following conditions: (1) $250,000 personal recognizance bond with 5 financially responsible co-signers; (2) home confinement; (3) the defendant cannot directly or indirectly associate or have any contact with known government witnesses, victims and victims family members (this would not limit investigators from conducting appropriate defense investigation, conducted in the presence of standby counsel in a language that standby counsel can understand); (4) access to one telephone without internet access and a preapproved list of numbers to be called (and consent to a pen register); (5) access to laptop computer with limited internet capability to be monitored by pretrial services; and (6) consent to unscheduled inspection of phone and laptop. Ex. B (Dkt. No. 377), at 1 n.1.

The Government and standby counsel reached an impasse with respect to the following two conditions: (1) the defendant cannot directly or indirectly associate or have contact, outside the presence of standby counsel, with his co-defendants, and any contact in the presence of standby counsel must be in a language that standby counsel can understand; and (2) the defendant cannot directly or indirectly associate or have contact with any individual currently or formerly associated with Lev Tahor; however, the defendant can submit a list of names of people associated with Lev Tahor to the Government and pre-trial services for preapproval for communications with those specific people. *See* Ex. B at 1-2.

On October 12, 2021, Matityau filed a letter opposing the Government's proposed conditions and stating that, even if the Court imposed those conditions, he would not follow them. *See* Dkt. No. 380-1, at 1-2 ("Your Honor there is no circumstances that I can agree to those unfair conditions who violates all my rights and the rights of my community."); *id.* at 2 ("This is clearly a hate crime and crime against humanity and motivated by personal bias and hate from the reform Jewish prosecutors against my original Jewish community, and therefore, I will never let this to happen and of course I will never agree on my own will to violate all of our rights, my own rights, my families' rights, and all rights from the three hundred innocent human beings of my

community."); *id.* at 3 ("Nevertheless, with this statement I want clarify to the Court in advanced of my bail hearing, that if the Court intend to impose on me one of these conditions, I would not be able to accept it and to agree with them in any way."); *id.* ("It would be a waste of the valuable Courts time in this bail hearing if the court impose me these unfair conditions and the hearing should be adjourned.").

Your Honor conducted a bail hearing for Matityau on October 12, 2021. *See* Ex. C (Transcript of Bail Hearing). After hearing argument from the Government, Your Honor noted, "Mr. Malka, there appears to be a showing that's been made that, A, you constitute a risk of flight because you have minimal to no contacts in the United States, that's number 1, and, number 2, that you pose a danger to the community by virtue of some of the -- some of the conduct that you've engaged in in this matter." *Id.* at 36. The Court asked Matityau to address those issues in his remarks. Matityau then asked that his filed letter be read into the record, including the portions of the letter indicating that he would not abide by conditions set by the Court that he disagreed with. *See* Ex. C. at 36-46.

Your Honor responded by explaining to Matityau that, under the Government's proposed conditions, he would not be precluded from talking to his co-defendants for purposes of preparing for trial—he would simply be required to have standby counsel present and have the conversations in English so standby counsel understood what was taking place. Ex. C. at 47-48. The Court then indicated its agreement with the Government's proposed conditions, stating, "there are some restrictions that I believe the Government has raised that I think are valid." *Id.* at 48. Nevertheless, Your Honor continued, what Matityau had "indicated to the Court is that [he was] not prepared to abide by any of the conditions that may be imposed." *Id.* Because Matityau was unwilling to abide by conditions set by the Court, Your Honor ordered that he remain detained, reasoning as follows:

> So, you've indicated you're not prepared to abide by any set of conditions that the Court may impose that you beg to differ from or that you believe compromises your ability to represent yourself and/or impedes your ability to communicate with your community, even if those are somewhat limiting restrictions. And I'm not saying that I would impose total restrictions on you, because I do recognize that you represent yourself. You are entitled to confer with your co-defendants to the extent that you may have similar defenses, all right, and that there is a potential for calling witnesses from your community, all right, that you may want to have testify at trial. So, I would not impose severe restrictions, but there may be some restrictions on your communications with your co-defendants and with your community.
> 
> I will also say this though, that I do have concerns, grave concerns about your ties to the United States. They relate to the risk of flight. While you are an American citizen from what I understand, you have very little ties to the United States. You've spent most of your time outside of the United States. So that raises grave concerns to the Court with respect to your risk of flight.
> 
> Your community is not -- what you indicated that you're very close to -- is not within the United States, it is abroad, it is in Guatemala, all right. And, so, there is

> concerns about your risk of flight and your ties to the United States, and whether or not -- if I do release you, whether or not you would return as required.
>
> Also, with respect to danger to the community, as the Government has indicated and after reading rather the Indictment, you are charged or -- you are charged with being a part of a conspiracy that not only removed the children on one occasion, but that was involved in multiple attempts to remove the children.
>
> So, with that in mind, I find that given all the factors that the Court must consider, one, you are a risk of flight, you do pose a risk of flight, and, two, you do pose danger to the community, all right, and you've indicated that were the Court to set -- impose a set of conditions and require you to post bail, that you're not inclined to follow them.
>
> . . . .
>
> So, I'm going to deny your application for bail. The Court finds that you impose -- rather, that you pose a flight risk and a danger to the community.

Ex. C, at 49-52.

More recently, in April 2022, Matityau and Mordechay asked for a new bail hearing, which was scheduled for April 19, 2022, before Judge Krause. Prior to the hearing, the defendants submitted a letter to Judge Krause attaching hundreds of pages of materials and requesting that they be allowed to call various witnesses, play ten audio tapes, play five videos, and display photographs and documents at the bail hearing. *See* Dkt. No. 546. Judge Krause denied those requests, concluding that "it is not clear why any of this witness testimony is necessary for the narrow set of legal issues that are relevant for the hearing"; that "Mr. Malka will have an opportunity to make a proffer to the Court regarding any issues that are relevant for the Court's consideration"; and that "it is again not clear why [the tapes and videos are] even necessary for the bail hearing . . . given the relevant legal standards and voluminous documentary that Mr. Malka already has submitted." Dkt. No. 552.

At the April 19 hearing, the defendants repeated their request that they be allowed to call witnesses and present videos, recordings, photographs, and other materials. *See, e.g.*, Ex. D (Transcript of Bail Hearing), at 25 ("I have no choice but go all over again from the beginning and let's make a whole hearing, let me bring witnesses, let me prove . . ."). Over the course of a three-hour bail hearing, Judge Krause repeatedly denied this request, explaining, "We are not here to conduct a mini-trial on the merits of the Government's allegations against these defendants." *Id.* at 7. With respect to the request to call witnesses, Judge Krause stated the following:

> As far as the question of calling witnesses and you proving that you're not a danger to the community or a flight risk, I will give you some leeway to talk about that by way of a proffer today, especially since it's your first bail hearing, but the Court has—it's clear from case law that the Court has discretion to limit the scope of what is and is not permissible at a bail hearing in order to focus the inquiry on the

questions that are the most relevant for that bail hearing. And you may say what you're proposing to do is not a mini-trial, but I have a different view of that. The idea that you would call a whole slew of witnesses in an effort to prove that you are not a risk of flight or a danger to the community, strikes me very much as what you will have an opportunity to do at your trial next month, so we are not going to have a parade of witnesses come in here for you to attempt to prove somehow that you are not a risk of flight or a danger to the community, because the Government is not going to stand here and put up all its witnesses to try to prove the contrary, nor is it required to. It is permitted under Second Circuit precedent to proceed at a bail hearing by way of proffer and you can do the same.

*Id.* at 27-28. Judge Krause continued:

> What I have said is there is a certain amount of discretion that courts have with respect to what evidence can and can't be presented at a bail hearing, and I have not heard you explain to me any reason why witnesses are necessary to address the issues in this case for purposes of a bail hearing. At trial, you'll have an opportunity to confront and cross-examine the witnesses against you. For purposes of the bail hearing, particularly when there is a proposed package for release and particularly given the timing and logistical circumstances here, I am asking you to explain to me what you expect those witnesses would say that would include the Court's evaluation of the factors involved for a bail determination, so just tell me what you think the witnesses would say.

*Id.* at 52. With respect to defendants' request that they be allowed to call Jane Doe at the bail hearing, Judge Krause stated:

> I have never once heard of a scenario where a defendant at a bail hearing calls the alleged victim in a case as part of a bail hearing. I—that might very well be unprecedented and I—that seems problematic on so many levels that I can't even begin to list all of them.

*Id.* at 53. In response to the defendants' request to call a Rabbi from the jail, Judge Krause explained:

> It's not clear to me how good conduct at the jail has any basis one way or the other on the questions that are relevant for the Court's determination at a bail hearing whether you would be a danger to the community or risk of flight. Certainly if you're in jail, you're not a risk of flight. That's the definition of jail.

*Id.* Finally, with respect to the defendants' request to call their alleged co-conspirators, Judge Krause stated:

> So you propose to call witnesses who were alleged co-conspirators in the case to offer testimony on your behalf as to why you if you were released would not be a risk of flight or a danger to the community. That is on its face not especially

> persuasive. Now, that may ultimately be useful testimony for you at trial, for the defense that you are seeking to put forward, . . . but I don't see the need for testimony from any of those witnesses to address the specific inquiries that are before me at today's hearing.

*Id.* at 54. In short, Judge Krause concluded, "nothing that has been said here today convinces me that there is a need to present witnesses for purposes of my evaluation at this bail hearing." *Id.* at 55.

At the bail hearing before Judge Krause, both defendants—once again—clearly stated that they would not agree to abide by certain conditions proposed by the Government, even if the Court imposed those conditions. Given the defendants' position that they would not follow the Court's bail conditions, Judge Krause ordered that they remain detained pending trial.

The defendants subsequently appealed Judge Krause's decision to Your Honor, and a hearing was scheduled for May 4, 2022. On May 1, 2022, the defendants filed a letter—virtually identical to the letter filed with Judge Krause—again requesting that they be allowed to call five witnesses (Jane Doe, a Rabbi from WCJ, and three of their alleged co-conspirators), play ten audio tapes, play five videos, and display an unidentified number of pictures and documents. Dkt. No. 573. On May 2, 2022, the Court issued an order asking the defendants for additional information about their requests, and instructing the Government to respond to the defendants' requests. Dkt. No. 580.

Matityau and Mordechay Malka are scheduled to go to trial before Your Honor starting on May 18, 2022.

## II. <u>Applicable Law</u>

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts may order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *Patriarca*, 948 F.2d at 792; *Chimurenga*, 760 F.2d at 405.

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charges; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. 3142(g). Evidentiary rules do not apply at detention hearings, and the Government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (Government entitled to proceed by proffer in detention hearings).

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

### III. Discussion

The Court should deny the defendants' request for a mini-trial, just two weeks prior to when the actual trial begins. As Judge Krause correctly concluded, "it's clear from case law that the Court has discretion to limit the scope of what is and it not permissible at a bail hearing in order to focus the inquiry on the questions that are the most relevant for that bail hearing." Ex. D, at 27; *see also, e.g.*, *United States v. Martir*, 782 F.2d 1141, 1144-45 (2d Cir. 1986) ("Congress did not want detention hearings to resemble mini-trials . . . . Congress [chose] to leave the issue to the judgment of the courts on a case-by-case basis. . . . [T]he Act hence gives courts considerable discretion regarding the methods of presenting information about the risk of flight . . . ."). And as Judge Krause correctly found, there is no reason for the Court to allow witnesses, videos, audio, and other documents to be presented at this bail hearing. The defendants can present their entire case in two weeks at the trial; it is unnecessary and a waste of judicial economy to allow them to spend hours (or days) presenting their entire case in the context of a bail hearing. At the bail hearing, the defendants can proceed by proffer and explain what they expect their witnesses to say and what they expect their other evidence to show. The Court should therefore, just like Judge Krause, deny their request to present witnesses, videos, audio recordings, and other time-consuming evidence. The Court can rule on any disputed issues without a mini-trial on the merits.

With respect to bail itself, the Government's position remains the same: the Government is generally willing to consent to bail as long as certain conditions are in place to ensure the defendants' appearance in court and the safety of the community—and to ensure that they do not, once again, try to remove the Victims from the country. The Government would also need the defendants to agree to comply with any conditions set by the Court.

For both defendants, the Government is proposing the following conditions of release, consistent with its October 2021 letter: (1) $250,000 personal recognizance bond, secured, with 5 financially responsible co-signers; (2) home confinement enforced by location monitoring; (3) the defendant cannot directly or indirectly associate or have any contact with known government witnesses, victims and victims family members (this would not limit investigators from conducting appropriate defense investigation, conducted in the presence of standby counsel in a language that standby counsel can understand); (4) access to one telephone without internet access and a preapproved list of numbers to be called (and consent to a pen register); (5) access to laptop computer with limited internet capability to be monitored by pretrial services; (6) consent to unscheduled inspection of phone and laptop; (7) the defendant cannot directly or indirectly associate or have contact, outside the presence of standby counsel, with his co-defendants, and any contact in the presence of standby counsel must be in a language that standby counsel can understand; and (8) the defendant cannot directly or indirectly associate or have contact with any individual currently or formerly associated with Lev Tahor; however, the defendant can submit a

list of names of people associated with Lev Tahor to the Government and pre-trial services for preapproval for communications with those specific people.

As set out in the Government's prior letter, the Government views these conditions as necessary to any bail package because the defendants' likelihood of fleeing or causing harm to others is significantly increased if they are in contact with their co-defendants and certain members of the Lev Tahor community. The defendants, who are Guatemalan residents, attempted to kidnap two children at the direction of leaders of Lev Tahor—including their co-defendants, Nachman Helbrans and Mayer Rosner—as well as other members of Lev Tahor, including several individuals not currently incarcerated in the United States. They have repeatedly expressed their view that what they did was justified, and they clearly believe that the Victims should be away from their mother and back with Lev Tahor. Permitting Matityau and Mordechay to be at liberty and free to communicate with Helbrans and other co-conspirators in Lev Tahor significantly increases the likelihood that they engage in this type of conduct again, especially in light of subsequent attempts to kidnap the victims in the case. (*See* Dkt. No. 358 ¶ 16 (superseding indictment charging defendants and their co-conspirators detailing an attempt by members of Lev Tahor to kidnap the victims in March 2021)). A prohibition on communications with co-defendants is a standard condition for defendants on bail in multi-defendant cases. Further, with an unrestricted ability to communicate with other members of Lev Tahor, the defendants would be better able to plan and execute fleeing from the jurisdiction. The Government's insistence on such a condition is not based on a hypothetical concern: following the December 2018 kidnapping, Mordechay and other members of the conspiracy fled the United States to Mexico with the help of their confederates in those countries. In an effort to reach a compromise, and acknowledging the fact that the defendants are proceeding *pro se* and may therefore need to engage in certain communications for purposes of their defense, the Government has proposed that the defendants have the ability to interact with their co-defendants in the presence of standby counsel, and that the defendants be able to speak to members of the Lev Tahor community on a pre-approved list. Our understanding is that these compromise positions have been rejected.

Moreover, both defendants have previously indicated that they would not comply with certain conditions, even if they were ordered by the Court. The defendants should not be released if they will not agree to abide by Court-ordered conditions. They can, of course, argue at a bail hearing that those conditions are unnecessary, but they cannot simply choose to ignore Court-ordered conditions they disagree with. If the defendants maintain the same positions they expressed before Judge Krause, they should remain detained pending trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
    Sam Adelsberg
    Jamie Bagliebter
    Jim Ligtenberg
    Daniel Tracer
    Assistant United States Attorneys
    (212) 637-2494 / 2236 / (914) 993-1953

cc: Defense Counsel (by ECF)