Exhibit D

```
1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2
   ------------------------------------x
3  UNITED STATES OF AMERICA,

4
                                   7:19-CR-497 (NSR)
5     -vs-
                                   BAIL HEARING
6
   MATITYAU MOSHE MALKA,
7  MORDECHAY MALKA, et al.

8                        Defendants.
   ------------------------------------x
9
        *Proceedings recorded via digital recording device*
10
                               United States Courthouse
11                             White Plains, New York

12                             April 19, 2022

13

14 B e f o r e:

15                             HONORABLE ANDREW E. KRAUSE,
                               Magistrate Judge
16

17 A P P E A R A N C E S:

18
   DAMIAN WILLIAMS
19     United States Attorney for the
       Southern District of New York
20 JAMES A. LIGTENBERG
       Assistant United States Attorney
21

22 JOSEPH A. VITA, ESQ.
       Standby Attorney for Pro Se Defendant, Matityau Moshe Malka
23

24 SUSAN C. WOLFE, ESQ.
       Standby Attorney for Pro Se Defendant, Mordechay Malka
25
```

```
 1   ALSO PRESENT:

 2
     VINCENT ADAMS, U.S.P.O.
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              MR. LIGTENBERG:  Good morning, your Honor.  Jim
2   Ligtenberg for the Government.
3              THE COURT:  Good morning, Mr. Ligtenberg.
4              MR. VITA:  Your Honor, Matityau Moshe Malka is
5   appearing pro se and I am standby counsel, Mr. Joseph Vita.
6              THE COURT:  Good morning, Mr. Vita.  Good morning, Mr.
7   Malka.
8              THE DEFENDANT:  Matityau Moshe Malka.  Good morning,
9   your Honor.
10             THE COURT:  Good morning, Mr. Malka.
11             THE INTERPRETER:  Stephen Zeger, standby Yiddish
12  interpreter for the federal courts.
13             THE COURT:  Good morning, Mr. Zeger.
14             MR. WOLFE:  Good morning, your Honor.  Susan Wolfe,
15  standby counsel for Mordechay Malka.
16             THE COURT:  Good morning, Ms. Wolfe.  Good morning,
17  Mr. Malka.
18             MR. MORDECHAY MALKA:  Good morning.  Mordechay Malka,
19  your Honor.
20             THE COURT:  Good morning.
21             Okay, my name is Magistrate Judge Krause.  It's nice
22  to meet those of you who I have not met before.
23             Let me just first start by saying you can see here
24  that we do not have a court reporter in the courtroom here
25  today.  That's pretty standard for appearances before magistrate

1  judges, as you may know.  The proceeding is being recorded and

2  it will be possible to create a transcript of today's proceeding

3  if it's necessary for whatever reason.

4          Mr. Ligtenberg, I'll ask the Government to please

5  order a transcript of the proceeding just in case it's

6  necessary, and we'll see whether that needs to be done on an

7  expedited basis or whether it can be done for regular delivery

8  depending on how things go today.

9          MR. LIGTENBERG:  Will do, your Honor.

10         THE COURT:  Okay.

11         With that in mind, Mr. Malka and Mr. Malka in

12  particular, I will ask that when you address the Court, you make

13  sure to speak slowly and you speak into the microphone because

14  the recording system that we have in the courtroom only works

15  properly through the microphones, so in order to make sure that

16  your arguments are heard and picked up properly for purposes of

17  creating a transcript, it's necessary to do what I'm doing here,

18  which is speak clearly and into the microphone.  We can see as

19  we proceed today whether it will make more sense for you to

20  stand as you address the Court, which is typical, or whether for

21  purposes of a clear and accurate recording, it makes more sense

22  for you to stay seated so you can speak more clearly into the

23  microphone.  We can evaluate that as we proceed today.

24         Okay?

25         MR. MATITYAU MALKA:  Yes.

1          THE COURT:  All right, I see you both nodding your

2   heads, so thank you.

3          Let me also just start out here today by setting the

4   stage for what this proceeding is and what this proceeding

5   isn't.

6          First of all, I've received a lot of submissions from

7   the both sides in advance of today's hearing and I have

8   reviewed, heh, a lot of material, but not every single scrap of

9   paper that I have received.

10          From Mr. Malka and Mr. Malka, I received on Friday

11   evening at approximately ten p.m., that is April 15th, a

12   five-page letter dated April 15th, which I have read in its

13   entirety, and approximately 360 pages of additional materials

14   submitted by the defendants in support of their application here

15   today.  I have looked through all of those materials.  I have

16   read some of them.  I have not read each and every page of those

17   materials.

18          Last night, in the evening, I received from the

19   Government a letter which is on the docket at ECF no. 551.  I

20   should have said that the defendants' submission is on the

21   docket at ECF no. 546.  The Government's submission is on the

22   docket at ECF no. 551.  It's a nine-page, single-spaced letter

23   which I have read in its entirety, and there are approximately

24   200 pages of transcripts and other materials attached to that

25   letter.  Again, I have looked at all of that material; I have

```
 1  not read every single page of that material.

 2          Some of those transcripts were of proceedings that Mr.

 3  Matityau Malka --

 4          I apologize if I mispronounce your name.  Is that

 5  close, Mr. Malka?

 6          MR. MATITYAU MALKA:  It's a hundred percent correct.

 7          THE COURT:  Okay, can you say it again for me, please.

 8          MR. MATITYAU MALKA:  Matityau Malka.

 9          THE COURT:  Matityau?

10          MR. MATITYAU MALKA:  Malka.

11          THE COURT:  Malka.

12          Malka I have, but Matityau, is that correct?

13          MR. MATITYAU MALKA:  Yes, your Honor.

14          THE COURT:  Okay, thank you.  And if I misstate that,

15  I apologize, and please feel free to correct me.

16          Several of the transcripts that were submitted by the

17  Government, I believe two of the transcripts, were of

18  proceedings that Mr. Matityau Malka participated in, so those

19  would be proceedings that he at least would be familiar with,

20  whether or not he has seen those transcripts or not, and many of

21  the points raised in the Government's letter of last evening are

22  points that have been raised at other proceedings in this case,

23  specifically in advance of the two prior bail hearings that

24  Matityau Malka participated in before Judge McCarthy and Judge

25  Román.
```

1            So I have reviewed the materials I've just described.

2            I've also reviewed the Pre-Trial Services reports for

3    each defendant.  Those were prepared on...February 3rd, 2021, in

4    the case of Matityau Malka and back in...July of 2019 in the

5    case of Mordechay Malka.  I've also reviewed the current

6    superseding indictment in this case, which is on the docket at

7    ECF no. 358.  It's the third superseding indictment.  So I've

8    reviewed all of that material.

9            And it just bears repeating that what we are here for

10   today is a bail hearing, that is, to determine if there is any

11   condition or combination of conditions that will reasonably

12   assure these defendants' appearance in court as required and the

13   safety of any other person and the community.  We are not here

14   to conduct a mini-trial on the merits of the Government's

15   allegations against these defendants.  My understanding is that

16   this case is currently scheduled for trial on May 18th before

17   Judge Román, so approximately one month from today.  That will

18   be the opportunity for both sides to litigate the charges

19   against these defendants.

20           As in every case, the defendants are entitled -- every

21   criminal case, the defendants are entitled to the presumption of

22   innocence.  That applies for purposes of this proceeding as

23   well.  At the same time, I am required by statute to consider as

24   part of the bail evaluation the nature and the circumstances of

25   the offenses charged, the weight of the evidence against you,

1  your history and characteristics, and the nature and seriousness

2  of the danger to any person or the community that would be posed

3  by your release.

4          Now, based on the submissions I have received, my

5  understanding is that the Government may be willing to consent

6  to the release of Mr. Malka and Mr. Malka as long as that

7  release is subject to certain conditions that the Government

8  believes are necessary to ensure the appearance of the

9  defendants and the safety of the community.  I also further

10 understand from the Government's submission that there is some

11 additional information that the Government would need to have

12 before the Government can fully determine whether it will, in

13 fact, consent to the defendants' release.  Specifically, as set

14 forth in Mr. Ligtenberg's letter last night, the Government does

15 not currently understand what the defendants' proposal is with

16 respect to where they would live if they were released pursuant

17 to conditions, with whom they would live, and under what

18 conditions.

19         Now, Mr. Ligtenberg, were there any other particular

20 pieces of information -- aside from the question of

21 whether...aside from the question of whether the defendants will

22 consent to some of the specific conditions that the Government

23 has proposed, are there any other pieces of information that the

24 Government needs to have from the defendants about the potential

25 bail package in order to evaluate whether or not the Government

Bail Hearing                 USA v. Malka, et al.                    9

```
 1   would consent to release?

 2          MR. LIGTENBERG:  I think the only other thing I would

 3   mention, as your Honor knows, in the normal course, our office

 4   has a process by which we would approve co-signers, which often

 5   happens either before or after the release.  I think we would

 6   want to dive into who the co-signers are as well.

 7          THE COURT:  Okay.

 8          And just -- thank you, Mr. Ligtenberg.

 9          Just to be clear, what Mr. Ligtenberg is referring to

10   there is if there were financial conditions associated with the

11   release, meaning that the release were subject to a certain

12   unsecured bond, that bond typically, in almost every case, is

13   co-signed by one or more, sometimes up to four or five,

14   individuals who are either financially responsible individuals,

15   people who have income such that -- or assets such that they

16   could satisfy the bond if there were a violation of the

17   conditions, or people who have what is referred to as moral

18   suasion over the defendants, people who could help ensure that

19   the defendants in question would appear at court appearances as

20   required.

21          And as Mr. Ligtenberg explained, in every case that

22   I'm aware of, the Government has a process whereby it interviews

23   these potential co-signers to assess whether they are, in fact,

24   appropriate individuals to provide the financial assurances or

25   moral suasion that is contemplated by the bond.  That process
```

1   usually takes a couple of days, depending on the availability of

2   the co-signers to meet with the Government, but the Government

3   can generally make those interviews happen pretty quickly,

4   especially in this day and age when a lot of those interviews,

5   my understanding is, are taking place by video or telephone even

6   if necessary.

7           Is that correct, Mr. Ligtenberg?

8           MR. LIGTENBERG:  Yes, your Honor.

9           THE COURT:  Okay.

10          Now, I'm just going to go off the record for a second

11  and pause.

12          I have a note here, Ms. Brown, the people who are

13  trying to dial in to the conference line?

14          (Off-the-record discussion)

15          THE COURT:  While you do that, Ms. Brown, let me just

16  also add -- we can go back on the record for this.

17          Mr. Malka and Mr. Malka, in nearly every case where

18  defendants are seeking release on bail conditions, the

19  defendants through their counsel, where they have counsel, will

20  provide information for the Government to consider about the

21  proposed bail conditions in advance of a bail hearing, and that

22  information might include some of the things that Mr. Ligtenberg

23  has referenced in his letter and that I have referenced here

24  today, such as where you would propose to live upon release.

25  That is because if you are released, it would be subject to the

1  supervision of the Pre-Trial Services Office of the Department

2  of Probation and that information is necessary for Pre-Trial

3  Services to evaluate and to be able to understand what the

4  supervision would look like.

5          So I understand that that information has not been

6  provided here.  I just want you to understand that it is not at

7  all atypical or unusual for the Government to request this

8  information and, in fact, it's necessary for the Court to have

9  that information in order to evaluate whether release subject to

10  conditions is appropriate.

11          MR. LIGTENBERG:  Your Honor, just to make clear, just

12  in the last few minutes as I arrived to court, standby counsel

13  both showed me addresses where the defendants are proposing to

14  live, but, of course, having just received them, I have no

15  ability to do any due diligence or look into the identity of

16  that person, and also, I believe they provided the same address,

17  which the Government would oppose consistent with our proposed

18  condition that the defendants not have contact with each other

19  outside the presence of standby counsel.

20          THE COURT:  Okay, thank you, Mr. Ligtenberg, and thank

21  you for the update on that.

22          And let me just also make sure I understand, the

23  Pre-Trial Services reports, which were prepared in 2019 and 2021

24  as I alluded to earlier, both contain the recommendations from

25  the Pre-Trial Services Office that the defendants be detained

Bail Hearing                    USA v. Malka, et al.                    12

 1  because, according to both reports, there is no condition or

 2  combination of conditions that Pre-Trial Services believed would

 3  reasonably assure the appearance of the defendants here as

 4  required and the safety of the community.

 5          Mr. Adams, is it correct that that is still the

 6  position of Pre-Trial Services as to both defendants?

 7          OFFICER ADAMS:  Yes, your Honor.

 8          THE COURT:  Thank you, Mr. Adams.  Okay.

 9          Just wait to see if we can connect these folks through

10  the conference line.

11          (Brief pause)

12          THE COURT:  Okay, I think we have now successfully

13  connected the teleconference line and we have, it sounds like,

14  one or two individuals on the line who will be muted for the

15  purposes of this proceeding, but they should be able to listen

16  and hear at least relatively clearly, especially if we continue

17  to speak into the microphones as I indicated earlier.  Perfect.

18          Okay, so that concludes my introductory remarks to

19  sort of set the stage for where we are today.

20          Mr. Ligtenberg, let me turn to you.

21          Again, I have read the Government's submission and so

22  there's no need to recite all of that in detail.  I just want to

23  turn to you to have you articulate whatever additional

24  information you might like me to have as we start out this

25  proceeding and particularly what the Government envisions in

Bail Hearing                USA v. Malka, et al.                    13

```
 1  terms of potential conditions for release.
 2          MR. LIGTENBERG:  Yes, your Honor, and I don't have
 3  much to add that wasn't in our letter.
 4          We do feel that the defendants are significant flight
 5  risks and pose a significant danger to the community given their
 6  minimal ties to the U.S., the connections overseas, and the
 7  nature of the offense which involved, as your Honor knows,
 8  taking these kids outside the U.S., so, you know, we certainly
 9  think those are the factors that led Pre-Trial to recommend
10  detention.
11          We also recognize that the defendants have been
12  incarcerated for a long time.  We are trying to work with them
13  to come up with conditions that we think would be appropriate in
14  order to ensure that they do not flee and that they do not try
15  to kidnap these kids and try to take them out again, but, as
16  we've noted in our letter, I think the devil is in the details,
17  so our conditions are laid out, I'm happy to list them, but -- I
18  think, on page 8 of our letter.
19          And in addition to that, we would want sort of --
20  especially given the history with respect to one of these
21  defendants of indicating to Judge Román that he would not follow
22  conditions, we would want to be satisfied that the defendants
23  will comply with conditions even if they disagree with it here
24  in court, and then we'd also want to conduct our due diligence
25  on the place they're living and who they're proposing to live
```

1   with.

2           THE COURT:  Okay.  And just because Mr. Malka and Mr.

3   Malka may not have had the opportunity to read your letter,

4   while they may be familiar with the conditions, especially

5   Matityau Malka would be familiar with these conditions because

6   you had proposed them in prior bail hearings with him, I want to

7   make sure that Mordechay Malka is also familiar with the

8   proposal, and I think just for clarity of the record, even

9   though it is in the letter and I have read it, I think it does

10  make sense, Mr. Ligtenberg, if you'd read each of the

11  Government's proposed eight conditions so that we can have a

12  discussion about those.

13          MR. LIGTENBERG:  Yes, your Honor.

14          THE COURT:  Thank you.

15          MR. LIGTENBERG:  So a $250,000 personal recognizance

16  bond with five financially responsible co-signers; home

17  confinement; the defendant cannot directly or indirectly

18  associate or have any contact with known Government witnesses,

19  victims, and victims' family members, although this would not

20  limit investigators from conducting appropriate defense

21  investigations conducted in the presence of standby counsel in a

22  language that standby counsel can understand; access to one

23  telephone without internet access and a pre-approved list of

24  numbers to be called and consent to a pen register; access to a

25  laptop computer with limited internet capability to be monitored

Bail Hearing                USA v. Malka, et al.                15

 1  by Pre-Trial Services; consent to unscheduled inspection of

 2  phone and laptop; the defendant cannot directly or indirectly

 3  associate or have any contact outside the presence of standby

 4  counsel with his co-defendants and any contact in the presence

 5  of standby counsel must be in a language that standby counsel

 6  can understand; and finally, the defendant cannot directly or

 7  indirectly associate or have contact with any individual

 8  currently or formerly associated with Lev Tahor.  However, the

 9  defendant can submit a list of names of people associated with

10  Lev Tahor to the Government and Pre-Trial Services for approval

11  for communications with those specific people.

12          THE COURT:  All right, just let me ask a couple of

13  questions about this so I understand the scope of the

14  Government's proposal.

15          First, with respect to the home confinement proposal,

16  would that be home confinement to be enforced with location

17  monitoring?

18          MR. LIGTENBERG:  Yes, your Honor.

19          THE COURT:  Okay.

20          Also, just to follow up on the bond, earlier I

21  referred to the bond as an unsecured bond.  I assume that is

22  what the Government's proposal is here?

23          MR. LIGTENBERG:  Um...

24          THE COURT:  I mean secured -- there would be

25  financially responsible co-signers, but there wouldn't be any

Bail Hearing                USA v. Malka, et al.                    16

1  obligation for the defendant or their co-signers to put up any

2  cash, collateral, or property or anything like that, correct?

3          MR. LIGTENBERG:  I think we would be asking for a

4  secured bond.

5          THE COURT:  Okay.  In the amount of what?

6          MR. LIGTENBERG:  $250,000.

7          THE COURT:  The entirety of it secured?

8          MR. LIGTENBERG:  Yes, your Honor.

9          THE COURT:  Okay.

10         And with respect to the conditions having to do with

11  contacts with members of Lev Tahor, has that been a condition

12  that has been accepted and implemented with respect to any other

13  defendants?

14         I know this is a multi-defendant case and different

15  defendants are at different stages, I don't have the familiarity

16  with the case that Judge Román does obviously, but I know that

17  there have been different proceedings as indicated in some of

18  the Government's submissions, so has this condition in

19  particular been implemented with respect to any other defendants

20  who are currently out on bond?

21         MR. LIGTENBERG:  Yes, your Honor.  One of the

22  defendants' co-defendants about two months ago was released with

23  the consent of the Government.  It included this condition.  The

24  defendant provided a list of individuals associated with Lev

25  Tahor that he wanted to contact, and in that case, the

1   Government approved contact with every individual on that list.

2            THE COURT:  Okay, and approximately how many people

3   were on that list if you recall?

4            MR. LIGTENBERG:  I think approximately twenty?

5            THE COURT:  Okay.

6            And in that case -- and, again, every defendant is

7   situated differently and has to be considered individually, so

8   just because certain conditions were implemented for one

9   defendant doesn't mean that those conditions are appropriate or

10  sufficient for another day necessarily, but it does inform the

11  Court's understanding of how these conditions can or could be

12  implemented if I were to order those conditions, so that's why

13  I'm asking these questions.

14            With respect to the other defendant that you've

15  referenced, Mr. Ligtenberg, would there -- were the conditions

16  generally similar to the eight conditions listed here?  Were

17  there other conditions that were or were not included with

18  respect to that defendant?

19            MR. LIGTENBERG:  I believe they were, they were

20  roughly similar.

21            THE COURT:  Okay.

22            MR. LIGTENBERG:  I don't remember the exact

23  parameters, but I believe they were roughly similar.

24            THE COURT:  That's fine.  Okay, thank you, Mr.

25  Ligtenberg.  Anything else that you'd like to add?

1          MR. LIGTENBERG:  No, your Honor.

2          THE COURT:  Okay.

3          So Mr. Malka and Mr. Malka, I understand that you are

4   representing yourselves in this case pro se with the assistance

5   of standby counsel.  I will now turn to each of you to hear your

6   position with respect to the proposed conditions of release.

7          What we have here is...not necessarily the typical

8   scenario that we have in a hearing like this.  Very often, the

9   threshold issue in dispute is that the Government believes that

10  the defendant should not be released at all.  The Government

11  very often takes the position that there is no combination of

12  conditions that could reasonably assure the defendants'

13  appearance or the safety of any person or the community.  The

14  Government often takes a position that there are conditions, but

15  it's often the case when we have a disputed hearing, like the

16  one we have here, that the Government's position is there should

17  not be release at all.

18          That's not actually the Government's position today,

19  but the Government has taken the position that in order for it

20  to be comfortable with release and in order to consent to

21  release, these conditions would be required, so we sort of can

22  start our discussion a bit further along than where we might

23  otherwise have to start the discussion, which would be at the

24  threshold question of whether there is any condition or

25  combination of conditions that would be appropriate.

 1            So I'm not sure who wants to begin.  Have you

 2  discussed who should go first?

 3            Mordechay Malka is indicating that he would like to go

 4  first and so I'm happy to proceed that way, Mr. Malka, if you'd

 5  like to begin with sharing your thoughts.  Again, ordinarily I

 6  would ask you to stand, but if it's easier for you to speak

 7  directly into the microphone while seated, that's actually fine

 8  also, especially so that we can make sure that we have a clear

 9  recording.

10            MR. MORDECHAY MALKA:  Thank you, Your Honor.

11            THE COURT:  So I'd just ask that you bring the

12  microphone closer to you and we'll begin that way.

13            MR. MORDECHAY MALKA:  Okay, thank you, Your Honor.

14            I'm actually a little -- just for to start, I'm a

15  little confused how to proceed here because, first of all, the

16  Government submit their nine pages yesterday late night.  Of

17  course, no one of us was -- had the opportunity to even look

18  into that or to know more.  I mean, I hear, like, a few

19  statements, what it says, my wife just told me on the phone some

20  statements what it says there, but I can say that...I, I, I

21  didn't, of course, had a chance to read it, to be able to

22  respond to it, as I should, in a normal manner, but --

23            THE COURT:  Okay, well, let me just stop you there for

24  one second.

25            I do understand that.  I will say that many of these

1   arguments are arguments that the Government has made in many

2   prior proceedings in this case.  As I alluded to earlier, I know

3   this is your first bail hearing, Mr. Malka, so you may not have

4   had this letter filed in proceedings that specifically

5   implicated your bail application.  However, I don't want to make

6   an assumption.

7          Are the two of you brothers or you just have the same

8   last name?

9          MR. MORDECHAY MALKA:  Cousins.

10         THE COURT:  Cousins, okay.

11         So your cousin has seen almost all of these arguments

12  before because they are almost identical to the arguments that

13  were raised in his prior bail hearings, and so while I

14  understand that that's not necessarily true for you, I don't

15  think there's all that much in this submission that is new.  I

16  understand that you've been working on this case in your own

17  defense for a long time.  A lot of the recitations in the

18  Government's letter are taken actually almost verbatim from the

19  indictment, which you're certainly familiar with.

20         So I do understand that the submission came in late.

21  I will say that that is also not uncommon in a bail hearing.

22  Sometimes the submissions come in late.  That happens.  Your

23  submissions came in on Friday night and it was 400 pages, so the

24  Government didn't have a tremendous amount of time with that,

25  although I think in your case also, many of those submissions

Bail Hearing                USA v. Malka, et al.                    21

```
 1  were things that the Government had seen already, so we're all
 2  trying to do the best we can, but I recognize that this did come
 3  in last night.
 4          What I would suggest that you do is focus on the
 5  proposed conditions that the Government has considered, because
 6  if there is a way forward where you could see abiding by those
 7  conditions, then it -- despite the recommendation of Pre-Trial
 8  Services, I think I could find a way to release you subject to
 9  conditions.
10          I haven't made any final determinations about whether
11  those conditions are appropriate or not because I do want to
12  hear your arguments about them as well, but there's a proposal
13  on the table that provides a pathway to your release and so if
14  there are aspects of that proposal that are not agreeable to
15  you, I think we should focus your presentation now on the
16  portions of that proposal that are not agreeable to you.
17          Does that make sense?
18          MR. MORDECHAY MALKA:  Thank you, Your Honor.
19          THE COURT:  Okay.
20          MR. MORDECHAY MALKA:  So this exactly what I start to
21  explain it.
22          General, just to go over the conditions, I mean, most
23  -- of course, the, the, the fact of bail conditions is not of --
24  I'm not strange to that.  I know this is common and I will agree
25  and we always will -- we always said that we will do whatever
```

1  any judge, whatever, any order of any court.  However, those are

2  severe conditions.  Those are conditions that is not usually

3  always made.  I can say there's some conditions here that I

4  don't know if in history would happen such a condition.  I will

5  come to that.

6          But --

7          THE COURT:  Well, I'm not going to keep interrupting

8  you because I do want to give you an opportunity to speak, but

9  it's clearly not accurate to say that these conditions have

10 never in history been implemented because Mr. Ligtenberg just

11 said they were implemented with respect to one of your

12 co-defendants a few weeks ago, so it -- now, if your point is

13 that they've never in history been implemented prior to this

14 case, I have no way of evaluating that or not.  I will say that

15 the vast majority of these conditions are not all that uncommon.

16         There are a couple that are unusual, undoubtedly, but

17 many of these conditions are imposed routinely in cases

18 involving multiple defendants.  In particular, the condition

19 that one defendant cannot have contact, directly or indirectly,

20 with his or her co-defendants outside the presence of counsel,

21 that is a routine condition, as Ms. Wolfe or Mr. Vita could let

22 you know, very, very common condition that rarely receives any

23 objection.  That's not to say that you can't make an objection,

24 but it's not at all unusual, certainly not unprecedented.

25         The condition about contact with, with individuals

Bail Hearing                USA v. Malka, et al.

1  currently or formerly associated with Lev Tahor is more unusual,

2  undoubtedly, but there are facts and circumstances in this case

3  that motivate that condition, so...

4          Anyway, please proceed.

5          MR. MORDECHAY MALKA:  Okay, so, your Honor, this is

6  the exact point, pinpoint that I want to get.

7          Because the Government is asking such severe

8  conditions that I believe it's very severe and, I mean...even

9  without the, the restrictions about religious, the religious

10 group, just home confinement is also not -- not everyone have

11 home confinement with electronic monitoring.  It's usually the

12 -- on the most higher standard of conditions that this is in.

13         Now, the reason to impose conditions is only assure

14 that the person is not a flight risk or not dangerous.  If those

15 conditions that the Government is asking is forcing us to stay

16 in jail, as it happens for two years already, because we cannot

17 accept those such conditions, some of them because it violates

18 our constitutional right as freedom of religion, some of them is

19 directly jeopardizing our ability to defend ourselves.  Then the

20 results is that we stay in jail.  So if this is the other side

21 of the story, then that's why we came to the bail hearing with a

22 totally different perspective.

23         I want to prove and I want to show, as my right is, I

24 believe, maybe not, the Court will tell me, that I'm not --

25 there's no any concern of flight risk or dangerous, not to the

1  community, nor to any person.  This is, this is -- I'm ready to

2  prove it.  Behind {sic} a reasonable doubt.  I'm not saying

3  preponderance of the evidence, I am going to go all the way.

4  And that's why I ask the Court to allow me to call witnesses, to

5  allow me to bring evidence as it said in 242 § (f)(b)(2) (ph),

6  yes?  That person be allowed to present witnesses, to

7  cross-examining witness, to bring information and evidence, so

8  that's why I want to do it because I know that that's the

9  Government position.

10        And at the end of the day, if we accept the

11  Government's position, number one, we are dangerous, this is the

12  number one, you already dangerous, you already flight risk, now

13  let's move to the conditions, I feel that I didn't have my day

14  in court, I didn't have my bail hearing, and just the simple

15  language on the statute, in 342 (ph), says clearly that upon a

16  person is being arrested, the Court should first of all

17  determine if the person is a flight risk or is dangerous or is

18  necessary to any conditions.

19        I believe I can prove that I should be released, I

20  should be released under B, under section B, under B, in

21  recognition (inaudible) and whatever condition that I will not

22  violate any, violate any federal, state law or whatever, any

23  violation of the law.  That's what I believe I am -- my category

24  is.  And I can prove it.  I can prove that there's no any

25  concern, there cannot be simply any concern.

Bail Hearing              USA v. Malka, et al.                    25

```
 1            And this is not -- this is very unusual.  You will
 2   very rarely find a case that the defendant can prove and will be
 3   ready to prove at the bail stage that on the face, on the face
 4   of the charges, not going -- I'm not asking for a mini-trial, I
 5   know, I know Congress didn't want that bail hearings should be a
 6   mini-trial, I know that, I'm not asking for that, but I'm
 7   asking, simply, to be able to exercise my rights according to
 8   the Bail Reform Act to prove that I'm not dangerous and not a
 9   flight risk.
10            If the Court wants, intends, to give us no choice but
11   to accept those conditions, then, of course, I have no choice
12   but go all over again from the beginning and let's make a whole
13   hearing, let me bring witnesses, let me prove me, let me
14   prove -- and then if I'm not winning here, I am going to appeal
15   it and I am going to Second Circuit.  I have no doubt that by
16   Second Circuit, after 33 months, after all the proven evidence
17   on the face of no dangerous, no flight risk, on the condition
18   that restricting, restricting your religious association?
19            I mean, tell me when in history any judge or any
20   government prosecutor asks for a person, that you can be
21   released, but you cannot talk to your church, you can't talk to
22   anyone, go find another church, go find another -- change your
23   religion.  What do you mean?  This is my religion.  I grew up in
24   this -- I'm twenty years old -- twenty-eight years old.
25   Twenty-eight years I grew up in this religion.  I know no other
```

1  religion.  Those are my rabbis, those are -- I mean, so that's

2  why I assume that the Government simply want to assimilate me,

3  they want me to force me to change my religion.  That's why

4  Matityau Malka filed in docket 380, in the docket I cited to the

5  Court, saying that he feels the Government wants to assimilate

6  him.  What is the reason for that condition?

7          I mean, Lev Tahor is a community of 350 men, women,

8  and children.  They're a peaceful community.  They have nothing

9  to do with crimes.  Because the Government selected ten people

10 or eight people and charged them with, with, with, with certain

11 kind of offenses, that's why all men, women, children, they all

12 criminals?  And they all are -- so what is the logicalness of

13 this condition beside of the dehumanize the community?

14         THE COURT:  Okay, Mr. Malka, I'm not going to get into

15 a whole back-and-forth with you about what the Government is or

16 isn't attempting to do.  I just want to focus on a couple of

17 factual inaccuracies in what you've just said.

18         The condition that the Government has proposed with

19 respect to contact with Lev Tahor does not forbid all contact

20 with Lev Tahor.  It is a condition that requires limitations,

21 but it does not completely forbid all contact, so that's just

22 not accurate.

23         As to the question of whether you want to appeal

24 whatever happens here today, that's your right to do and Judge

25 Román can evaluate that at the appropriate time.  What makes

1  sense to me from a practical standpoint, given that it is April

2  19th, 2022, and that you have a trial scheduled for May 18th,

3  2022, is to focus on the question of whether there are

4  conditions that could allow for you to be released promptly,

5  promptly, meaning before the trial, so that you could be

6  released on bond, subject to conditions, as you prepare for the

7  trial.  An appellate process is going to take far longer than

8  that to play itself out, so, you know, there is a practical

9  consideration here based on the timing of everything given that

10  we're on the eve of the trial.

11           As far as the question of calling witnesses and you

12  proving that you're not a danger to the community or a flight

13  risk, I will give you some leeway to talk about that by way of a

14  proffer today, especially since it's your first bail hearing,

15  but the Court has -- it's clear from case law that the Court has

16  discretion to limit the scope of what is and is not permissible

17  at a bail hearing in order to focus the inquiry on the questions

18  that are most relevant for that bail hearing.

19           And you may say that what you're proposing to do is

20  not a mini-trial, but I have a different view of that.  The idea

21  that you would call a whole slew of witnesses in an effort to

22  prove that you are not a risk of flight or a danger to the

23  community, that strikes me very much as what you will have an

24  opportunity to do at your trial next month, so we are not going

25  to have a parade of witnesses come in here for you to attempt to

Bail Hearing                USA v. Malka, et al.

1   prove somehow that you are not a risk of flight or a danger to

2   the community, because the Government is not going to stand here

3   and put up all of its witnesses to try to prove the contrary,

4   nor is it required to.  It is permitted under Second Circuit

5   precedent to proceed at a bail hearing by way of proffer and you

6   can do the same.

7            So I will give you a little bit of latitude to talk

8   about that, we're not going to spend all day doing it, but I

9   will give you some flexibility to talk about those arguments you

10  believe I should consider to evaluate whether you are or not --

11  your release would or would not pose a risk of non-appearance or

12  danger to the community.  I will come back to you in a moment.

13           I want to turn to your cousin Mr. Matityau Malka,

14  because I believe in certain respects, you're a little bit

15  differently situated to Mordechay Malka only because you've been

16  here before, not with me, but with Judge Román and Judge

17  McCarthy, and have sort of gone through this exercise of making

18  various arguments at bail hearings and seeing the Government's

19  position with respect to bail or detention and going forward.

20           One of the elements of the Government's submission

21  that I did read, closely, was the transcript of your last

22  hearing with Judge Román where you through the assistance of an

23  interpreter read a letter that you had written to the Court and

24  then there was some colloquy about what that meant or didn't

25  mean, and Judge Román ultimately determined that based on what

1  you had said at that proceeding, he felt that you had indicated

2  an unwillingness to abide by the conditions of release that were

3  being contemplated.

4          There was some colloquy toward the end of that

5  proceeding where you seemed to be trying to suggest otherwise,

6  and in advance of the proceeding today, Mr. Vita, in

7  communicating with the Court, specifically with Ms. Brown, my

8  courtroom deputy, about scheduling this proceeding, indicated

9  that one change in circumstances with respect to you was that

10 you had expressed to him and were prepared to express to the

11 Court views that were not necessarily exactly the same as what

12 you had expressed previously to Judge Román.  That application

13 or that communication was not in any way a violation of

14 attorney/client privilege or anything of that nature because it

15 was provided by Mr. Vita as an explanation for what

16 circumstances had changed to justify an additional or new bail

17 application on your behalf.

18         And so I want to give you an opportunity, Mr. Malka,

19 and, again, for the record, this is Matityau Malka, to share

20 your thoughts on where we are from the perspective of your

21 potential release today.

22         MR. MATITYAU MALKA:  Thank you very much, your Honor.

23         THE COURT:  Mr. Malka, could you just put the

24 microphone a little lower so you're speaking into it.

25         MR. MATITYAU MALKA:  Thank you very much, your Honor,

1  and...as the Court just mentioned now that by my previous bail

2  hearing by Judge Román, it was some kind of a language that I

3  will not or I'm not willingly ready now to obeying the orders

4  that the Court will impose on me.  This was, this was not so

5  clear like that, because when I was just ask permission from

6  Judge Román to read a three-page letter through the interpreter,

7  before I just start to read this document, I mention to the

8  Court very clearly that I have a lot of other notes that I was

9  prepared to mention to the Court with that.

10         THE COURT:  Okay, Mr. Malka, we don't have to rehash

11 the history of what happened back in October.  Let's just

12 fast-forward to where we are today.

13         MR. MATITYAU MALKA:  Yes.

14         So as of today, I want to make sure that -- for the

15 Court that every condition that the Court will impose on my

16 behalf and this condition will not distract my freedom of

17 religion and not, and not to -- and this will not be like the

18 condition that I will not be allowed to talk to my, to my

19 community that I was growing up the last thirty years there, and

20 beside of that, I can say that almost seventy percents {sic} or

21 even more of this whole community is my close family, and now

22 that I am providing a list to the Government and by getting

23 permission from the Government to whom I'm allowed to talk or to

24 whom I'm not allowed to talk from my own religion, that I don't

25 have any other religion, I'm growing up in my previous thirty

1  years and my whole family is there, so now by getting permission

2  from the Government, I'm allowed to talk to them and not to them

3  and not to them, this is a peaceful community and all the

4  allegations that the Government were -- just did about --

5  against our community, that it's, it's...that it's a very

6  dangerous community and all kind of allegations similar like

7  that, it...everything is just based on newspapers or on other

8  or...in -- because nothing was proved that our community is a

9  dangerous community, that the only condition that even I already

10 sit way more than that time, I was been arrested on March 2019

11 and now already more than three years that I'm incarcerated in

12 the maximum of my -- in the maximum of the charge that I have,

13 it's three years, let alone the good time and all, and all other

14 things around that, but I already did almost over 37 months in

15 jail and, and, and now, and, and, now, if I want to just -- to

16 be released, but just this condition, it's could not ensuring my

17 appearance to Court, is could not make any sense that it is

18 right because my trial is in a month from now.

19         So if there -- if the Government just want ensure for

20 the Court that I will not flee from the country, to make sure

21 that I will show up in a day in court, I don't believe that

22 there is any human being believe like that if somebody have a

23 court in a month from now and the maximum he could serve is

24 three years, so what is the reason to flee and leave the

25 country?  If I already did my time, just to get another five

1  years or another year for contempt court and for other

2  violations around that?  It doesn't make even one percent sense

3  that even I'm a flight risk, because I already did my time.

4         And I'm able and I want to obey every condition that

5  the Court will impose on me, even there is a lot of conditions

6  here that it's (inaudible) usually other defendants, and I am

7  not saying that it's necessary, but I will agree to, agree to

8  all of this...basically all of this conditions now I will obey

9  it, but just this condition, not to talk to...so the only

10 condition, the issue is here, like, two, three conditions, but

11 basically the conditions is around restrictions about the

12 contact with Lev Tahor, my own community.

13        And the same thing is with my, with my co-defendants

14 that especially that -- especially of this co-defendants that

15 some of them are my rabbi, other are my teachers, and I don't

16 have any other, any other religion, even if I get to be

17 released, but just to study my religious needs, to study the

18 bible, to study everything, so I don't have a problem to talk

19 just on the phone and everything will be monitored, everything

20 will be sent directly -- every phone call directly to my standby

21 counsel and just to have limited computer with limited internet,

22 I don't have any problem with that, but even I don't see that

23 it's necessary, but focused on this condition with Lev Tahor.

24        The other condition is very important is that I cannot

25 understand whether this condition about I shall consent of

1  uninstructed {sic} search of my phone and laptop.  I understand

2  for uninstructed inspecting search in the, in the house where I

3  will be sitting, so this is I understand, but what is the reason

4  about to have an uninspected {sic} search for phone and laptop?

5          Especially I am proceeding pro se, so I have a lot, a

6  lot of privileged notes and correspondence with my standby

7  counsel and a lot of draft notes that I just starting and

8  witnesses statements that I'm looking through that and other

9  stuff that I'm not ready to handle {sic} it over to the

10 Government as of now, and it's not make any sense, even a

11 little, that the Government would be able -- the same way the

12 Government could not break in in another attorney's office and

13 take privileged stuff from, from, from, from an attorney.

14          I am not an attorney, but still I'm proceeding pro se,

15 and all my notes is there and I have a lot of statements from

16 different witnesses and also correspondence, private

17 correspondence between me and Mr. Vita, and just this week, I

18 cannot understand it make any sense of whether they have

19 probable cause or if there is some -- unless they get a order

20 from a judge so that is something, something is a little

21 difference, but just uninstructed search is not making any sense

22 for this.

23          THE COURT:  Okay.  I understand your point, Mr. Malka.

24          Mr. Ligtenberg, why don't you address a couple of

25 those points, one with respect to the unscheduled inspection of

1  the phone and laptop.

2          I mean, the point that Mr. Malka raises regarding

3  privilege is a valid point.  I imagine that the Government would

4  have ways of potentially conducting those searches that would

5  guard against those valid concerns that Mr. Malka has raised, so

6  I'd like to hear your position on that.

7          And then with respect to the contact conditions, 7 and

8  8 in your letter, I'd like you to address the extent to which

9  those conditions are contemplated for danger-to-the-community

10 purposes as opposed to risk-of-flight purposes, because, again,

11 I do think Mr. Malka raises a valid point with respect to risk

12 of flight.

13         It's not to say that there's no risk of flight given,

14 you know, various factors that have been laid out, including

15 both Mr. Malkas's strong ties to, to foreign countries and

16 comparatively more limited ties to the United States, but, you

17 know, the Government often makes arguments with respect to

18 flight risk based on the anticipated sentence being significant,

19 and it seems here that the mirror image of that has to be

20 considered and I think the Government has considered it to some

21 extent, meaning that the potential sentencing exposure for these

22 defendants after all this time is small, so Mr. Malka raises a

23 reasonable point with respect to perhaps that counseling against

24 a risk of flight or at least limiting the risk of flight in

25 certain ways.

1              So if you could address those two points, Mr.

2  Ligtenberg.

3              MR. LIGTENBERG:  Yes, your Honor.  Well, I'll start

4  with the last point, and I'd like to just correct for the record

5  something that the defendant said.  There is not a three-year

6  maximum sentence.  That is simply incorrect.

7              THE COURT:  Okay, I understand -- and just be clear, I

8  understood from prior filings and prior arguments in this case

9  that the Government's position is that potential sentencing

10 guidelines range, at least for Matityau Malka, would be 46 to 57

11 months.

12             MR. LIGTENBERG:  That's correct.

13             THE COURT:  That's something I read somewhere in one

14 of the many submissions.

15             MR. LIGTENBERG:  Correct, your Honor.

16             THE COURT:  Of course, the parties can always dispute

17 what the sentencing guidelines range is ultimately, but my

18 understanding has been that that's the Government's position, 46

19 to 57 months, based on what it knows now.

20             MR. LIGTENBERG:  Correct, your Honor, and for

21 Matityau, the maximum would be eight years, for Mordechay, the

22 maximum would be eleven years, and, yes, the Government believes

23 the guideline for both would be 46 to 57 months, well above the

24 amount of time that either of them have served.

25             I would also note that some of those enhancements that

1  are built into that calculation are enhancements that Judge

2  Román already applied to their co-defendants in the prior trial,

3  and some of them are victim-specific, not defendant-specific,

4  for instance, the vulnerable victim enhancement, so I do think

5  that that is the appropriate guidelines range.

6          THE COURT:  Okay, but, I mean, the defendants have

7  served upwards of 36 months in custody.  Or served.  I mean,

8  they've been in custody for upwards of 36 months.

9          MR. LIGTENBERG:  I believe that's true for Matityau.

10 I think Mordechay, it's shorter, closer to 33 --

11         THE COURT:  Okay.

12         MR. LIGTENBERG:  -- but, yes, they've been

13 incarcerated for a long time, and as your Honor noted, this is

14 why we're trying to make an effort...to get them out.

15         THE COURT:  I understand, but to that point, I mean,

16 if this were a case where you were coming in and saying that the

17 potential sentencing exposure for a newly-arrested defendant

18 were based on a guideline range, in Matityau Malka's case,

19 between 10 and 20 months or -- if I have the math right, it's

20 unlikely that you would be arguing, in fact, I'm sure you

21 wouldn't be arguing, that there would be a risk of flight based

22 on the sentencing.  You might have other arguments for risk of

23 flight, but you certainly wouldn't be arguing that based on the

24 sentencing exposure.

25         MR. LIGTENBERG:  I think it's absolutely a factor your

1  Honor can consider, but I think there are so many other factors

2  that show a risk of flight here, and there is an incentive the

3  to flee.  I do think there is a substantial likelihood that

4  following a trial that they would be looking at additional jail

5  time.

6            THE COURT:  Look, I am not suggesting that there is --

7  that the sentencing issues are dispositive on this question one

8  way or the other.  It's just that I think you would acknowledge

9  that in certain respects, those issues, theoretically at least,

10 diminish the risk of flight.  They don't entirely remove the

11 risk of flight, but I think there is a degree to which it does

12 diminish the risk of flight.  You don't have to agree with that,

13 that's what I think, but let's talk about the, the

14 contact-limitation conditions, because Mr. Matityau Malka just

15 addressed that more in the context of risk of flight.

16           While I understand that that is a component of the

17 Government's argument in the sense that communication with

18 individuals who are abroad could potentially facilitate one's

19 flight from the United States, I also understood that there was

20 a component of that argument that also had to do with danger to

21 the community, which was not addressed as part of Mr. Matityau

22 Malka's presentation just now.

23           MR. LIGTENBERG:  Absolutely, your Honor.

24           THE COURT:  Okay, so if you'd address that on the

25 record, I'd appreciate it.

1          MR. LIGTENBERG:  As your Honor saw in the indictment,

2  as we laid out in our letter, this isn't just one attempt to

3  take these children outside the U.S.  This is three separate

4  attempts, including most recently about a year ago in March 2021

5  by another member of Lev Tahor who has not been arrested.  There

6  are various members of Lev Tahor, including the defendants, who

7  have expressed their commitment to getting these kids back to

8  Lev Tahor, to getting them out of the country.

9          These defendants acted at the command of the leaders,

10 Nachman Helbrans and Mayer Rosner.  In various filings

11 throughout this case, all of the defendants have made clear

12 their dedication to getting these kids away from their mother.

13 They think that, really, they haven't done anything wrong and

14 that they have every right to do it and they have worked at the

15 direction of these leaders.  Allowing them to have contact with

16 these leaders and with other leaders, unsupervised, without

17 standby counsel there, with certain leaders is -- absolutely

18 poses a danger to the community, given the history of this case

19 of people -- lower-level people in Lev Tahor at the bidding of

20 more senior people trying to carry out these kidnappings, and

21 that's particularly the case given Lev Tahor's sizeable contacts

22 overseas, their demonstrated ability and the conduct here to get

23 out of the country, in many cases completely undetected, and

24 their efforts to move the community to places like Iran that are

25 likely outside the reach of U.S. law enforcement and would

1  successfully take the kids away from their mother forever

2  potentially if there's no effort.

3          So there are significant risks to allowing sort of

4  unfettered communication, but we realize they have close friends

5  and family members and really, that their ties are to Lev Tahor

6  and not to New York, and that's why we've tried to come up with

7  a reasonable proposal, which, as we've explained, has worked

8  with another defendant where, you know, if they want to talk to

9  their mom, if they want to talk to siblings, close family

10 members, we're not going to stop them from doing that as long as

11 it's reasonable, and as I said, the twenty-some people that were

12 listed by the other co-defendant, we approved every single one

13 of them.

14         So we're not trying to cut them off from Lev Tahor,

15 we're not trying to jam them up unnecessarily, I think we're

16 trying very hard to create a circumstance where they can get out

17 under sufficient conditions, but, you know, we can't agree to

18 just let them talk to sort of anyone in that community who might

19 be prodding them to "just go grab the kids and get out of here,"

20 as has happened multiple times in this case.  It's a similar

21 concern about co-defendants and, as your Honor noted, that is a

22 very standard condition in these circumstances.

23         THE COURT:  All right, and then, Mr. Ligtenberg, on

24 the point about the request for unscheduled inspection of phone

25 and laptop.

Bail Hearing                    USA v. Malka, et al.                    40

1            MR. LIGTENBERG:  Yeah, my understanding, and maybe

2    Pre-Trial can step in here, is that, you know, this is a

3    condition that is imposed, it's imposed in child pornography

4    cases I believe --

5            THE COURT:  Mr. Ligtenberg, I've certainly seen it in

6    child pornography cases.

7            MR. LIGTENBERG:  And --

8            THE COURT:  Or something similar.

9            MR. LIGTENBERG:  Certainly the Government isn't

10   seeking to review any privileged documents or communications,

11   but, you know, we'd be happy to work with Pre-Trial to set up

12   some sort of mechanism, you know, to ensure that there are no

13   privileges being broken, but ensure that he's also not using his

14   phone and computer to try to plan another kidnapping of these

15   children.

16           THE COURT:  No, I understand the purpose of it, Mr.

17   Ligtenberg, and I guess, Mr. Adams, maybe you could speak to

18   this briefly.

19            I mean, to the extent that that condition were to be

20   imposed, would it be that Pre-Trial would conduct those

21   inspections?

22           OFFICER ADAMS:  If those conditions were given by the

23   Court, we would be doing the inspection, and if we felt there

24   was some violation, we would notify the Government of those

25   violations so they could look into it to see if there were

Bail Hearing                USA v. Malka, et al.                41

1  actually violations.

2          THE COURT:  Okay.

3          OFFICER ADAMS:  So it would go from us to the

4  Prosecution to determine whether if there were actual

5  violations.  We may think it's a violation, but they may not

6  think it is.

7          THE COURT:  Okay, that's helpful, Mr. Adams.  Thank

8  you.

9          And, Mr. Ligtenberg, would it be possible if that

10  condition were to be implemented to have that evaluation --

11  well...I'm not sure that it's necessary to have some sort of

12  separate team involved in it because, again, as I understand it

13  now and a little bit more clearly, the inspection would be

14  conducted by Pre-Trial as opposed to by, for example, an agent

15  of the FBI or whatever investigating agency has been taking the

16  lead on this matter.

17          I assume it's the FBI.

18          MR. LIGTENBERG:  Yes, your Honor.

19          THE COURT:  Okay.  Nor would it be an investigative

20  agent from the U.S. Attorney's Office, it's Pre-Trial Services,

21  which is an agency of the United States Government, yes, but

22  not...not aligned with the United States Attorney's Office in

23  the sense of being part of the prosecution team, so it is a

24  distinction that is not incredibly clear for people who are not

25  as familiar with the ins and outs of the criminal justice

1  system, I recognize that, but Pre-Trial Services is not working

2  hand in glove with the United States Attorney's Office to try to

3  achieve certain prosecutorial goals.  Pre-Trial Services has a

4  role to play in ensuring that whatever conditions are set by the

5  Court are complied with during the course of a defendant's

6  release pending trial.

7          Okay, thank you, Mr. Adams, and I'll come back to you

8  in one second, Mr. Malka.

9          Mr. Ligtenberg, is there anything else that you wanted

10  to add on any of the questions I've presented so far?

11          MR. LIGTENBERG:  No, your Honor.

12          THE COURT:  Okay.  Let me turn back to Mr. Malka,

13  Matityau Malka.  If you want to take a second to speak with Mr.

14  Vita, that's fine.

15          (Defendant consults Standby Counsel)

16          THE COURT:  All right, I'd like to turn back to you,

17  Mr. Matityau Malka, if you'd like to address any of the points

18  that you've just heard from Mr. Ligtenberg, which were designed

19  to speak to some of the issues that you just raised in your

20  presentation.

21          MR. MATITYAU MALKA:  Yes, your Honor.  Thank you very

22  much.

23          The thing is about the uninspected search of the

24  computer and laptop, I would like to ask the Court if it's

25  possible to do such a condition like this as would be that if

1   the Pre-Trial Services, it's possible to, to seek a search

2   warrant from the Court in based on probable -- based on their

3   concern why they want to do it.  This is one thing.  And if this

4   is not, if this is not a, if this is not a -- if this could not

5   be done at least before the handling {sic} over the stuff what

6   they believe it's a violation of condition or something like

7   this, they should, they should be -- before they send it to the

8   Government, they should just send it to the Court for a

9   in-camera review, and then if the Court...this is regarding the

10  computer and...this is regarding the computer and the laptop.

11         But now I want to make a, now I want to make -- now I

12  just want to mention to the Court that my last two, three

13  previous bail hearings, the Government was requesting a

14  non-secured bond of $230,000, and now the Government change it

15  for a secure bond.  Even it's hard for me, like I explained

16  before, but I will obey it, and not just I will obey it, I have

17  it already ready, I have already a place to live, I have between

18  five or ten co-signers, how much the Court will impose on me, I

19  have it ready already, and this is people that are financial and

20  it's people that where they have businesses in, in their

21  financial.

22         And, and I just want to, I just want to, I just want

23  to point out to the Court if there is any other condition in the

24  whole history that it's could changed the condition of number 7

25  and 8 regarding the condition about not -- to be limited to talk

```
 1  to my community and to my defendants, so I will be able to agree
 2  every other condition that the Court will impose on me, even
 3  it's very, very hard and it's not usual, but I will take this
 4  instead of this, just because I understand the Government just
 5  mention now that they are not limiting me because I will be able
 6  to talk to my family, my siblings, but the issue here is not
 7  just about talking to my family, my siblings, the issue is, like
 8  I mentioned to the Court before, that this is my, this is my
 9  religion and my religion is not just to talk to my father and my
10  mother, my wife, my children, my other siblings, the issue is
11  this is my community, and just -- not just because the
12  Government decided to pick up from 350, something like this,
13  men, woman, children, to charge them, it's mean already that the
14  whole community they are criminals and they are allow now to
15  single out this community just because that.
16          And also, the Government mentioned earlier what is --
17  that I was get involved to kidnap those victims, those children
18  from New York, from the mothers, and there is two things.
19          First of all, I am not charged with them, I'm charged
20  with attempt, and especially with this, especially it's -- the
21  only -- the only, the only thing what, what I was -- with what I
22  was have involved to do with this case is just the handling over
23  few phones to the minor and that's it and everything was based
24  on the request of the minor themself, and there is not even one
25  phone conversation on those phones that was handled over to the
```

1  minor, not an incoming call, not a outcoming call, nothing from

2  those phones that I provide for minor one.

3           And it is not in the Government -- and the Government

4  cannot say that I was getting involved with, with, with even,

5  even -- I'm saying very clearly on the record that it didn't was

6  -- that it didn't was here a violation about the Court only

7  because even when the Family Court, when the Family Court was

8  issue a temporary order --

9           (Brief interruption)

10          THE COURT:  Hold on one second.  If you can mute that

11 again.  I'm not sure what happened.

12          (Brief pause)

13          (Off-the-record discussion)

14          THE COURT:  All right, Mr. Malka, you can continue.

15          MR. MATITYAU MALKA:  Thank you.

16          So the thing is just I was -- there's no any record

17 how I was involved in any kind of, of kidnapping someone out of

18 the country, take out of the hand of the mother, even in the

19 time when the Government was arrest me, so the file was not

20 served with the papers that the mother had the custody and took

21 it out from the father, the father was just served the papers

22 until January 3, so in the time when I was arrested March 26th,

23 the father was not served and not aware that the mother still

24 have the custody from -- of the children, but even this is --

25 even it's could be that a family issue, a Family Court issue,

1  but they're saying that -- the Government saying that I was

2  violate a Family Court order by doing it, but it's just -- I was

3  just handle over a phone and there was no any kind of attempt

4  and it was in front of the mother's house in the middle of the

5  day, so if I was -- really was want to kidnap, like the

6  Government has covered, the minors, so who would go in the

7  middle of the day in front of the mother's house and handle over

8  a phone for a minor?

9          So there's even not one percent sense to believe that

10 if somebody approach with -- in, in the middle of the day, in

11 front of the mother's house, when they can just in one second

12 call -- contact the police and let them know, so which kind of

13 attempt for kidnapping is it if it's just the middle of the day?

14 It is not just in some...some...some plans for -- or I didn't

15 talk nothing about any plan, just handle over a phone.

16         And the only reason I'm handling over the phone for

17 her was just she was restricted and not allowed to report the

18 abuse what Abraham Greenwald with another guy, that his name is

19 Abraham Itzhak Mertz, and another guy with the name is Joseph

20 Litchkin, but we have so many records how those guys especially,

21 especially Abraham Greenwald, was abused this night.

22         And also we have phone conversations, recorded with

23 consent from the minor, how few days before my arrest and few

24 days after my arrest, she was trying to report the abuse when

25 she went over from all those people, and nobody was allow her to

Bail Hearing          USA v. Malka, et al.

1  report the abuse because they didn't want it the abuse that they

2  did to be reported.

3         And it's not just that.  Two weeks, two weeks before

4  my arrest, I was at an interview with Detective Booth in...in

5  Williamsburg, in Brooklyn, and I told him all the abuse was this

6  minor going through, and he open up the computer from the

7  station and he saw several of, of phone, of phone calls calling

8  from the minor in trying to reporting the abuse.  And I told him

9  exactly -- and I ask them, I ask Detective Booth, is this a

10 violation or I'm doing something wrong by providing her a phone

11 just to be able to report abuse?  He told me no.  If the mother

12 -- if, if, if...there is not -- it is not any kind of overt act

13 of some kind of kidnapping or just to handle over a phone to be

14 able to report abuse, there's not such any crime and this is the

15 only thing.

16        And also, I went willingly with him to report the

17 abuse and he saw on the record so many abuses what she was --

18 went through.

19        THE COURT:  Okay, Mr. Malka, I'm going to stop you

20 there.

21        I do understand that you have what you believe to be a

22 meritorious defense to this case.  I understand that.  The

23 Government obviously has a very different view of the

24 significance of all of this.  That's why the prosecution has

25 continued, other co-defendants of yours were convicted already.

1  That doesn't mean that you are necessarily going to be

2  convicted, you have the presumption of innocence, but there's a

3  lot to this case.  When I said that we were not going to have an

4  extended colloquy about all of this today, that is partly what I

5  meant, but I appreciate everything you've shared so far.

6          Let me ask you, before I turn back to your cousin, I

7  do understand that there are particular conditions that the

8  Government has proposed that are objectionable to you and I will

9  make a final determination on those when we wrap up this

10 proceeding, but this is a critical question and it was where you

11 were tripped up, clearly, in the last proceeding before Judge

12 Román, and the question is this.

13         If I were to impose all of the conditions, including

14 the unscheduled inspection and the limited contact with your

15 co-defendants and the limited contact with members of Lev Tahor,

16 if I were to agree with the Government that those conditions

17 were appropriate and reasonably necessary to ensure your

18 appearance and the safety of any person and the community, would

19 you abide by those conditions?  Meaning would you follow those

20 conditions if I were to impose them.

21         (Brief pause)

22         MR. MATITYAU MALKA:  I just want to ask the Court the

23 permission to...

24         THE COURT:  Yes, speak to Mr. Vita.

25         I mean, the record should reflect that there was a

Bail Hearing                USA v. Malka, et al.

1  long pause, several seconds, maybe ten seconds, in response to

2  that question and Mr. Malka has asked to speak to his standby

3  counsel, which he certainly should do.

4          (Defendant consults Standby Counsel)

5          MR. MATITYAU MALKA:  Yes, your Honor, every condition,

6  even that is not set up here in this proposal, even though be

7  very critical and very hard for me, I will obey it and I will

8  obey every other and each order that the Court will impose on

9  me.

10          But just what I want, what I want to make clear, that

11  even about, even about the uninspect -- the uninspect {sic}

12  search of the computer and laptop, if I don't have any choice,

13  for sure, I will obey it, if there is no any other choice to do

14  it in a different way, but the only thing is what I want to

15  make, please, ask very much the Court, that I already, I already

16  am in jail here over three years and my wife and my children,

17  they're ready to come here and to be able to -- in the apartment

18  where I shall be released.  I just want to ask the Court if

19  there is any other condition in the whole history, even it's

20  could be $500,000 personal reconization {sic} with secured bond

21  or more stricter than that, more co-signers, fine.  I'll put on

22  some properties or other -- any other condition.  Even as it be

23  very hard, I will hundred percent obey it and fully, but just

24  ask very much the Court that because I want to have the

25  opportunity to prepare how much it's possible in the last few

Bail Hearing                USA v. Malka, et al.                    50

```
1   days before trial that the Court shall release me on -- under

2   all -- the Court shall try to find every other condition, more

3   co-signers, more money, or any which other condition, but not a

4   condition that it will violate my constitutional right, that

5   this is violate that I don't have -- that I could not talk to my

6   community and just within the (inaudible) and just permission

7   especially that I mentioned, that I don't have a problem to talk

8   with just one phone, a recorded phone, directly to the, directly

9   to my standby counsel or directly even to the Pre-Trial

10  Services, but -- and everything should be recorded.

11          So if there is any issue that I could get in touched

12  {sic} with somebody to do any crime that I'm not -- I will not

13  do it, but even though some kind of concern about that,

14  everything is recorded, a second after the phone conversation,

15  everything is sent to Pre-Trial or to standby counsel, but --

16  so, so...I really asking the Court to -- please, to find any

17  other condition to avoid this condition and I will obey

18  everything in full what the Court will impose on me.

19          THE COURT:  Okay.  Thank you, Mr. Malka.  Just give me

20  one second.

21          Ms. Brown...

22          (Off-the-record discussion)

23          (Brief recess)

24          THE COURT:  I'd like to turn now to Mr. Mordechay

25  Malka and give you an opportunity to address some of the points
```

Bail Hearing                  USA v. Malka, et al.

1   you referenced earlier with respect to risk of flight and danger

2   to the community on your own behalf.

3            MR. MORDECHAY MALKA:  Thank you, Your Honor.

4            As I said just earlier, I feel that in order for me --

5   I mean, after, like, all of the nine pages that the Government

6   produced, after all the negativity and allegations in the

7   indictment that the Court told me, the Court had the opportunity

8   to review it, after all -- after what they just mentioned here

9   on record, maybe it's not ordinary, maybe not all cases is

10  asking to have those kind of bail hearings, but I believe in my

11  case, after -- to disprove what the Government says, I mean,

12  they mention nine pages, I mean, many of -- many...things that I

13  know the Court will take this in consideration to decide if we

14  are flight risk or dangerous to the community, so to disprove

15  what they said and to prove what I want to prove, what is the

16  truth, what, what is the facts according to the all factors to

17  be considered in sub-section G, limited, I understand -- again,

18  I'm not trying to make it a mini-trial, but if the, if the

19  statute mention this, not I, I mean the statute mention it, a

20  defendant should have an opportunity to provide witnesses and

21  evidence and cross-examining witnesses.

22           So that's...unless the Court tell me different I don't

23  think so, I will say as I know.  I'm not a lawyer, I'm not -- I

24  never really practice law --

25           THE COURT:  Right, but you've chosen to represent

 1  yourself in this case, so --

 2          MR. MORDECHAY MALKA:  Yes.

 3          THE COURT:  -- so the I'm-not-a-lawyer explanation is

 4  really not adequate.  It's your choice to be here representing

 5  yourself, so it is a choice you have to live with.

 6          MR. MORDECHAY MALKA:  No, but what I say is -- what I

 7  want to say is, I can say what statute say, but if the actual

 8  law is different and there is no such right to bring -- to

 9  provide witnesses and evidence at a hearing, then the Court can

10  tell me and I will accept it whatever the Court say because the

11  Court know the law, I don't -- the Court do know.  I may have --

12          THE COURT:  What I have said is there is a certain

13  amount of discretion that courts have with respect to what

14  evidence can and can't be presented at a bail hearing, and I

15  have not heard you explain to me any reason why witnesses are

16  necessary to address the issues in this case for purposes of a

17  bail hearing.  At trial, you'll have an opportunity to confront

18  and cross-examine the witnesses against you.  For purposes of

19  the bail hearing, particularly when there is a proposed package

20  for release and particularly given the timing and logistical

21  circumstances here, I am asking you to explain to me what you

22  expect those witnesses would say that would include the Court's

23  evaluation of the factors involved for a bail determination, so

24  just tell me what you think the witnesses would say.

25          I gather from what Matityau Malka has said, one of the

1  witnesses you propose to call here is the victim in this case --

2  one of the victims in this case.  I have never once heard of a

3  scenario where a defendant at a bail hearing calls the alleged

4  victim in a case as part of the bail hearing.  I -- that might

5  very well be unprecedented and I -- that seems problematic on so

6  many levels that I can't even begin to list all of them.

7           You seem to think that the victim in this case will

8  somehow vindicate your defense and demonstrate that you are

9  not...a danger to the community or a risk of flight.  It's not

10 really -- I'm not sure what your basis for that conclusion is,

11 but that is what you anticipate you might elicit from the victim

12 in this case if you were able to call one or both of them to

13 testify.

14          That is one of the points you want to raise, correct?

15 Yes?  You're nodding your head.

16          MR. MORDECHAY MALKA:  Yes, your Honor.

17          THE COURT:  Okay.

18          You also indicated in your submission that you wanted

19 to call certain individuals from the jail?  I'm not sure if

20 those were meant to be other defendants or jail employees, to

21 testify on your behalf about how you have been compliant with

22 conditions at the jail.  Is that correct?

23          MR. MORDECHAY MALKA:  Yeah, it was a co-conspirator --

24          THE COURT:  Co-conspirator.

25          MR. MORDECHAY MALKA:  And the chaplain, the Jewish

1  chaplain, at the jail.  Yeah, both.  A rabbi.

2          THE COURT:  Okay.  It's not clear to me how good

3  conduct at the jail has any basis one way or the other on the

4  questions that are relevant for the Court's determination at a

5  bail hearing whether you would be a danger to the community or

6  risk of flight.  Certainly if you're in jail, you're not a risk

7  of flight.  That's the definition of jail.

8          And the danger-to-the-community prong, because you --

9  even if you were completely compliant with all jail rules and

10  regulations, I'm glad to hear that, that is certainly a good

11  thing, but it doesn't necessarily shed much light on whether you

12  would or would not be a risk of flight or a danger to the

13  community if you were released, so I don't think there's any

14  need to have witnesses testify as to those points.

15          It wasn't entirely clear what the third category of

16  witness that you were seeking to call was because it was -- the

17  name was redacted from the submission.

18          What was the third category?

19          MR. MORDECHAY MALKA:  It was another co-conspire --

20  alleged co-conspirator, yeah.

21          THE COURT:  Okay.  So you propose to call witnesses

22  who were alleged co-conspirators in the case to offer testimony

23  on your behalf as to why you if you were released would not be a

24  risk of flight or a danger to the community.  That is on its

25  face not especially persuasive.

Bail Hearing                USA v. Malka, et al.

```
 1          Now, that may ultimately be useful testimony for you
 2  at trial, for the defense that you are seeking to put forward,
 3  and I won't be there at the trial, you can proceed in whatever
 4  way Judge Román authorizes and that is consistent with the
 5  Federal Rules of Civil Procedure, but I don't see the need for
 6  testimony from any of those witnesses to address the specific
 7  inquiries that are before me at today's hearing.
 8          If you'd like to tell me in your own words a bit more,
 9  as Mr. Matityau Malka did a few minutes ago, about why you
10  believe that you are not a danger to the community or would not
11  be a danger to the community if released or pose any risk of
12  flight, you should go ahead and do that, but I don't -- nothing
13  that has been said here today convinces me that there is a need
14  to present witnesses for purposes of my evaluation at this bail
15  hearing.
16          MR. MORDECHAY MALKA:  Thank you, Your Honor.
17          THE COURT:  Okay.
18          MR. MORDECHAY MALKA:  So I will do what you propose me
19  to do, to go on and try to lay out -- at least start to lay out
20  my arguments and hopefully that in some way to be enough for the
21  Court to, to convince the Court that I'm not dangerous.
22  However, I want to pinpoint one point the Court just said, and
23  this is a very -- I'm very glad the Court said this.
24          The Court said that the Court had never -- the Court
25  never had such a case like -- that someone calling the victim to
```

Bail Hearing                USA v. Malka, et al.                    56

1   testify on his bail hearing so he should be released, so this is
2   true, this is true, I know.  This is -- and most cases, I mean,
3   99.99 percent of the cases, the victims will testify the
4   opposite, they will say that person hurt me or tried, whatever,
5   to -- that -- to, to, to, to kill me or whatever, robber {sic}
6   me or whatever, he should stay in jail, he is dangerous to me,
7   but this factor that the Court just said indicate to me that the
8   Court had never had the chance to hear anything clearly from our
9   side, and this is clear.  The Court is right.
10          After reading the Government's nine-page position,
11  after hearing the Government's on, on, on...whatever --
12          THE COURT:  Just to be clear, as I said at the
13  beginning, you submitted 400 pages of materials.  I read a lot
14  of them, not all of them, but it's not accurate that I haven't
15  seen any of what you've provided on, on what you describe as
16  your side of the case.  That's just not accurate.
17          You can continue.
18          MR. MORDECHAY MALKA:  Yeah, your Honor, by the way, I
19  hope the Court realize that whatever was submitted was not the
20  main point of my motion.  For some reason, my lawyer wasn't able
21  to upload, some of them was with redacted information, and
22  therefore I will say maybe my most important material did not
23  went on, on the docket, so -- but anyway, this factor that the
24  victim -- that why we say, why I want to call the victim and --
25  it, it, it stands alone to show and to support our argument that

1  there's no dangerous at all to the very same victim.

2           There was never -- yes, when the Government say

3  thirty-five times kidnapping, kidnapping, kidnapping,

4  kidnapping, kidnapping, kidnapping, again and again, twenty

5  times victim, victim, victim, victim, victims, everyone thinks

6  that this is, whatever, this is a kidnapping, this is a victim,

7  right?  But when the Court will hear my test -- my arguments, my

8  evidence, my witnesses, the Court will find out totally

9  different picture, 180-degree different.  The Court will find

10 out that there was no kidnapping at all, there was no victim at

11 all, there was no any concern about the well-being of the

12 children or any, any, any factor that might be found by anyone

13 that there was such victim here, totally the opposite.  The

14 Court will find, with my evidence, that the defendants only

15 acted in effort to help this...children.  The children cry for

16 help; we tried to help them.  We tried to provide humanitarian

17 help for a child.

18          Your Honor, I know you never had such a case, but this

19 is not an ordinary case.  That's why I'm saying, your Honor,

20 that's what -- we never had a chance.  The defendants during the

21 three years of this proceeding have never had a chance, once, to

22 present their side of the case.

23          Yes, there was a trial.  I'm not going to go into that

24 because the Court is not -- it's a different judge, I'm not

25 going to go into that, but, in fact, if the Court will check the

1  record, you'll see the defendant was removed -- their pro se

2  right was removed right, right before the trial on the day when

3  the trial begin, so their lawyers didn't present their side at

4  all and -- but anyway, this will go up to appeal.

5          Now, when the Court and unfortunately the Government

6  is, is putting us in a position where we cannot present, if we

7  cannot prove what we want to prove, right?  There will always

8  will be victim, you will always will be -- you will always say

9  dangerous because you cannot prove different, but if the Court

10  will allow me to prove it, I will prove it.  And your Honor,

11  this is not my evidence I gonna, I gonna pull up from whatever.

12  This obvious evidence on the -- from the Government's own

13  discovery, your Honor.  There is many recordings from, from the

14  very same victim, so-called victim, where she's pledding {sic}

15  for help.  Your Honor, you have to be...any reasonable person

16  who see those evidence will understand, that this case can never

17  be dangerous, you can never be dangerous to the very same

18  victim.

19          Let me give you just one example, a simple example.

20          Someone, whatever, a, a, a -- someone's get caught for

21  shoplifting, some kind of burglary, and he's calling his

22  friend -- he's in the police car, he's calling his friend and

23  saying, oh, I am here, I got caught, can you help me.  He say,

24  oh, what can I help you.  I don't know, come here.  So he came.

25  He tell the police, look, just open me the door so I can go

1  away.  He opens the door of the car and he runs away with him.

2  Tomorrow, this person get charged.  At the hearing, the

3  Government says that he's dangerous to the community.  Why is he

4  dangerous?  To whom is he dangerous?  He dangerous to the person

5  that he helped, to him he's dangerous, and he's a victim of who?

6  He's a victim of him, of the rescued person.

7         I mean, this might be illegal, it might be a criminal

8  contact, but you can never say this is a victim, you can never

9  say he dangerous to the very same victim.  You can say he's

10 dangerous to other people because, whatever, maybe he can help

11 other criminals to escape, but it's maliciously -- the

12 fundamental is malicious to say that this is -- that he's a

13 victim of him and he is simply whatever -- or try to call that

14 he just kidnapped him, he kidnapped this person and whatever.

15        I mean, this is totally different story, your Honor.

16 This is not -- there's no even -- it's not even -- it's not a

17 close call.  It's not at all.  There's no -- all the evidence

18 will show the difference, show you that there's no victim, no --

19 and that's why, of course, definitely is the -- your Honor, the

20 mother of the minors also so-called victim because when a

21 parental kidnapping, the victim should be -- my lawyer help me

22 to write at least a motion to the Court where she argue that in

23 this case, the victim should be the mom, not the children,

24 because it's parental kidnapping, but anyway...

25        So the mom of the children, the mother, the one that

1   work for the Government and came testify for the Government at

2   the last trial, she wrote a letter to the Court last month for

3   the sentencing and she said the incarceration of the defendants

4   is damaging and is causing pain to -- and suffering to me and my

5   children.  My incarceration is the biggest tragedy for the

6   victim.  When the victim will stand here, she will cry to the

7   Court "let them out, they helped me, they didn't kidnap me, I'm

8   not dangerous to them, they not dangerous to me, why are they in

9   jail, I don't understand," from first day.

10           Your Honor, there's a video, that I ask to play

11  videos, I will give you one example, there's a video interview

12  that the Government interviewed the victim.  It was January 9th,

13  2019.  Just right after they brought back the alleged victims

14  from Mexico, and I will go into that, how the victims try to

15  fight with them not to come back here.  They knew that they

16  gonna be abused here, they knew that they were rescued, but the

17  Government force them back and assure the continue abuse here.

18  Why?  Because they gotta win the case.  Or because they gotta

19  destroy the Lev Tahor community, but we'll get to that later.

20           So in this individual, this is the first -- the first

21  that we got it, probably there were other interviews, we did not

22  get most of the discovery that they should got -- they should

23  give us, we didn't got it, as many violation that they're doing

24  in this case.  It's also, by the way, a factor of the length of

25  the detention.  We'll get to that later.

1          In this video, the minor, the, the, the FBI agent is

2    questioning her what happened, what is going on, why did you

3    went to Mexico, why are they arrested.  They're asking her.  So

4    he responding, oh, because they help me.  So they say, what, did

5    they help you?  He say, yes, I asked them to help me, to help

6    me, that's why.  And then what he say?  Can I please go visit

7    them in jail, I want to talk to them, I want to talk to them,

8    they are my people, I want to go -- I want to talk with them,

9    why can I not talk with him.  Your Honor, have you ever find a

10   victim to say this?  Never.  Not -- this is totally, totally

11   different case.  It's not the only -- it's not the usual case.

12         This is a case of pure religious persecution.  There's

13   no any logic in this case, and the Government knows that.  This

14   defendant is from whom?  From them.  Not from me, your Honor,

15   from the Government, and there's hundreds of hundreds of pieces

16   of evidence like this available in discovery.  The Government

17   knows it, and there's many more that the Government doesn't

18   know.

19         There's a recording where the girl talked to a friend

20   two days after Matityau was arrested, two days, and she's

21   telling the friend -- and the Government has it, this is Goldie

22   Rosner, the friend, the Government know what I'm talking.  If

23   they want to know.  So this -- so the minor saying to her friend

24   "do you know what I went through here, you can't imagine what I

25   went through here.  I went through fifteen times hell."  Where?

 1  Where did she went through?  By us?  No, by the Government.  Not

 2  by the defendants, by the Government.  In other words, she's a

 3  victim, but from the Government, not from us.  Totally different

 4  story.  There's so many proven evidence.

 5            It's course, of course, the minor will testify in our

 6  favor, no doubt about it.  In the trial, in the trial, the minor

 7  testified and said that she asked us to help her and she didn't

 8  want to be here and she was blocked here by force.  Your Honor,

 9  the Government say kidnapping, kidnapping?  When there's no any

10  sense of kidnapping, any sense of kidnapping, anything.  There's

11  no any, any reason why they should call kidnapping.  Helping a

12  child to run away from abuse is kidnapping?

13            I mean -- and the Government's saying that when they

14  know, they know, that the children are not from here, the

15  children lived in Guatemala for many years.  Just a few weeks

16  before the alleged kidnappings, the Government, the U.S.

17  Government -- I don't say the Prosecution Office because it

18  wasn't involved them, but the Government wrote in their

19  submissions, they say that the mom grab the children, so the mom

20  kidnap those children from Guatemala by force, by force.  The

21  minor testified in trial that she was blocked here by force

22  against her will.  Not the five-year-old child, a

23  fourteen-year-old young woman.  Poor woman, she was brought here

24  by force.  And abused and tortured here.  Everything why, why?

25  Because you gotta change your religion.  You Lev Tahor?  You

1 gotta be assimilated.  Okay, you gotta change your religion and
2 find another religion here?  You don't want, you will be force.
3 We will force you, we will make sure you change your religion.
4          So she was -- they kidnapped the children, they
5 brought them here by force, the children cried to us for help.
6 I was not able to sleep at night when I heard the abuse of the
7 children.  I have a recording here also provided by the
8 Government recently where I am -- it was, like, two, three weeks
9 before the alleged kidnapping.  I am talking to one of the
10 witnesses I want to call, Aron Rosner, this was the last one the
11 Court asked me, and I talking to him on the phone and I telling
12 him what I hear from another co-conspirator, alleged --
13 everyone's a co-conspirator now, alleged co-conspirator, and I'm
14 telling him -- I didn't know he were recording me and I'm trying
15 to tell him, to tell him what the children went through, the
16 abuse the children went through just the last few days, and I'm
17 telling him that this co-conspirator that told me, that told me
18 that -- later on became an informant for the Government, so he
19 told me, "I won't be able to sleep tonight when I just heard
20 what the children went through."
21          Your Honor, there's so many -- there's not any piece
22 of evidence to support a dangerous of flight risk, any piece of
23 evidence.  What is the case about?  There's no case at all.
24          Let's say, your Honor, there is such a law that even
25 if you help a child escape abuse, even if you help a child for

1  humanitarian aid, the law is above everything, and whatever it

2  was, it was a custody order, you not allowed to do it, leave her

3  to die, don't help her.  Let's say there's a case, let's say I'm

4  a criminal, I'm the biggest criminal, but dangerous?  Where's

5  dangerous, your Honor?  Flight risk?  Where's the flight risk?

6          Your Honor, do you know that at the time of my arrest,

7  I was in Guatemala with my wife and children at home.  I was, I

8  was...confident at home, I didn't -- wasn't fear of any -- of

9  the Government.  I was in Guatemala far away.  When I hear that

10  I'm indicted, right away I took a plane, I game to Guatemala.  I

11  left my children behind, left my wife, left my family.  With

12  tears in my eyes, I get on a plane and came here.  Because I

13  want to be honest.  If I am charged, I gonna face it.  I wanna

14  be here in trial.  It doesn't matter.  And I'm incarcerated

15  since then.  And if the Court think that I'm, I'm feeling bad

16  about what I did?  No, no, I did the right thing.  So I came

17  back, turn myself in for two-and-a-half years.  All why?  To

18  face trial.  To be able to prove my innocence.  And I'm a flight

19  risk?  I am a flight risk?  I came here myself.  What the

20  Government's talking about, where the flight risk, what they

21  talking about, what the heck they talking about?

22          And, your Honor, even more, for the last two years

23  already, the Government is -- it's not a new thing the

24  Government said today that they, whatever, the conditions --

25  they don't post bail, we just need to accept certain conditions.

 1  Your Honor, for two years they saying this already.

 2          Two years ago in March 20 was a bail hearing of my

 3  co-defendant.  At the bail hearing, the Court told him, you can

 4  be released now, right now -- it was Judge Davison -- you can be

 5  released right now, just accept the conditions, the very same

 6  condition the Government just said now.  He said, "I can accept

 7  everything, but not talk with my community?  I'd rather go back

 8  to jail."  He went back to jail for two years, two more years.

 9          Can you find another honest person like him?  A person

10  that when he will tell the Court "I'm going to follow the

11  condition, I'm not gonna run, I'm gonna appear in court, I'm not

12  gonna do any crime, I'm not gonna kidnap any children," I would

13  put a million dollars on his word.  A person -- this is who we

14  are.  And myself, the Government already at least seven, eight

15  months saying you can go out, just accept these conditions.  I

16  tell you no, those conditions violating my constitutional

17  rights, I'm not gonna lose from my community.  You want to

18  dehumanize a Jewish religious community?  For why?  For what?

19  What I did wrong?  You want to make sure to impose on me such

20  condition I cannot defend myself?  No.  So I'd rather stay in

21  jail.

22          Your Honor, did you find --

23          THE COURT:  Mr. Malka, let me interrupt you because

24  that is a critical point that you've just made.

25          Because if I am not persuaded that...I understand that

Bail Hearing                    USA v. Malka, et al.

```
 1  you have arguments that you've been discussing for the past
 2  fifteen minutes or so that are -- go to the heart of this case,
 3  go to the merits of this case.  As I said earlier, you will have
 4  your opportunity, consistent with the Federal Rules of Criminal
 5  Procedure and Judge Román's rulings, to present those arguments
 6  at your trial, but you're getting to kind of the nub of the
 7  issue just there in your last statement, because if I am not
 8  persuaded by your argument that you pose no risk of flight and
 9  no danger to the community, then the question would be, if I
10  were also then persuaded that in order to ensure your appearance
11  as required and the safety of any person or the community that I
12  needed to impose the conditions recommended by the Government, I
13  have the same questions for you as I had for Mr. Matityau Malka,
14  who did answer that question ultimately quite directly, and that
15  is, if I were to impose those conditions, would you comply with
16  those conditions.
17          MR. MORDECHAY MALKA:  Your Honor, I would comply with
18  even much harder conditions.  Even if the Court tell me you
19  don't talk to anyone in the world, anyone --
20          THE COURT:  I'm sorry, say that again, please.
21          MR. MORDECHAY MALKA:  If the Court will tell me I
22  cannot -- I'm not allowed to talk to anyone in the world, in the
23  entire world, I will follow it.  I will follow it.  Maybe I'm
24  dangerous.  Maybe I'm that dangerous.  I'll believe you, I will
25  leave -- I will trust you and follow you.  But telling me the
```

Bail Hearing            USA v. Malka, et al.

1  conditions that the Government say?  Dehumanizing my community,

2  violating my freedom and saying a pre-approved list, your Honor,

3  those are things that I'm not allowed to -- I'm not allowed --

4  your Honor, this is not --

5          THE COURT:  Listen, ultimately these are the

6  Government's proposed conditions.  If the conditions are

7  imposed, it will be me, it will be the Court, that will be

8  imposing the conditions, okay?  So that answer that you just

9  gave was...I don't understand it.

10          I don't understand -- when you say you would accept a

11  condition that you would not talk to anyone in the world, but

12  you wouldn't accept the condition as proposed by the Government,

13  I don't understand that, those two things are inconsistent with

14  one another, so I need a clearer answer, that if I, the Court,

15  were to impose the conditions that are recommended by the

16  Government, if I were to impose those conditions, would you

17  comply with those conditions.

18          It's really a yes-or-no question, and if the answer is

19  no, it's important that I understand that.

20          MR. MORDECHAY MALKA:  Your Honor --

21          THE COURT:  And if you'd like to discuss that with Ms.

22  Wolfe for a second, that's perfectly fine, but we're nearing the

23  end of time that we have available for this proceeding.  We've

24  already pushed off another proceeding that was scheduled for

25  eleven-thirty by forty-five minutes, which is fine, because

Bail Hearing                USA v. Malka, et al.

```
 1  there was a lot of material for us to cover here today, but we
 2  also have multiple other cases, that's what I was just
 3  discussing with Ms. Brown, there are a lot of items that the
 4  Court needs to attend to today, so we're not a hundred percent
 5  at the end, but we're very close to the end, and in order for me
 6  to be able to make final determinations on these questions, I do
 7  need to know the answer to the question that I just asked you,
 8  which is, if I were to impose the conditions that were
 9  recommended by the Government, would you be able to comply with
10  those conditions.
11          And if you'd like to take a minute to discuss that
12  with Mrs. Wolfe, I recommend that you do that.
13          MR. MORDECHAY MALKA:  Thank you.
14          (Defendant consults Standby Counsel)
15          MR. MORDECHAY MALKA:  Your Honor  -- sorry.
16          THE COURT:  That's okay.
17          MR. MORDECHAY MALKA:  Your Honor, as I said, I will
18  agree to whatever hard conditions you gave me, but conditions
19  that is on the face violating my constitutional rights, it's
20  only the condition that will cause irreversible harm, as the
21  Second Circuit already laid out that this is a different factor,
22  irreversible harm, conditions for bail is always appealable,
23  whatever, so conditions like this is causing me irreversible
24  harm, then I'd rather go back to jail, your Honor.  I would
25  rather go back to jail for another three years also.  I'll go
```

1  back for another three years of jail.

2            If the Court really determine that they feel I deserve

3  it, I trust you, I will go back to jail, your Honor, but --

4            THE COURT:  Mr. Malka, it's not a question of what you

5  deserve or don't deserve, it is a legal standard that I am

6  required to apply, and what I am trying to understand is

7  whether...you claim that these conditions would present

8  irreversible harm to you.  That is your right to make that

9  argument, and any decision I make, whether it is to detain you

10  or release you subject to conditions, is appealable, so you can

11  take that appeal and seek a de novo review of this bail decision

12  by Judge Romàn, whenever he's able to schedule you for that

13  hearing.

14            I understand that if I were to impose those

15  conditions, you would not be happy with those conditions.  I

16  understand that.  But what I think you've just said is that if I

17  were to impose these conditions, you will not comply with them

18  and that you would prefer to go back to jail rather than face

19  this particular set of conditions.

20            Is that correct?

21            MR. MORDECHAY MALKA:  Yeah, what I'm trying to say is

22  those conditions harder make me more than --

23            THE COURT:  Than being in jail.

24            MR. MORDECHAY MALKA:  More, yes.  It's more worse than

25  in jail.

1              THE COURT:  These conditions would be worse for you

2    than being in jail and so if my decision is that the only way I

3    could release you would be subject to these conditions, then it

4    would be your preference, in fact, to returning to jail because

5    being in jail is less...onerous for you than being out of jail

6    with these conditions.

7              Is that what you're saying?

8              MR. MORDECHAY MALKA:  For myself?

9              THE COURT:  For yourself.

10             MR. MORDECHAY MALKA:  And for -- the, the reason why I

11   would want to even return to jail is not to (inaudible) for

12   myself and for my Jewish community.

13             THE COURT:  Okay.

14             MR. MORDECHAY MALKA:  My Jewish community has been

15   persecuted during centuries and those were what -- these were

16   the main arguments of everyone prosecuted, that they are

17   dangerous.  That's exactly what I feel the Government trying to

18   do.  Label this community as dangerous, dangerous people,

19   kidnappers, child abusers, exactly same accusations that

20   followed us centuries upon centuries.  And I can prove it, I'm

21   ready to prove that.

22             THE COURT:  Okay, and you'll have the opportunity to

23   prove that at your trial next month.

24             MR. MORDECHAY MALKA:  But, but, but, your Honor, if

25   the Court really wants to make a decision, I -- your Honor, I

1  just gave you my whole review of the evidence that I want to

2  impose.  I want the Court to allow me to prove that I don't need

3  those conditions.  I'm not under section C, I'm under section B.

4  I'm not under this section.  I don't need those conditions.  I

5  don't need -- there's no any reason for those conditions, it's

6  unreasonable conditions, and I want the Court to allow me to

7  prove that.  I believe this is my right.  If it's not, tell me.

8           THE COURT:  I understand your position.  That, we have

9  addressed.  I am not going to continue this bail hearing to

10 allow the presentation of all of that evidence.  That -- if you

11 want to include that as part of your appeal of the

12 determination, you're welcome to do that as well.

13           Let me turn to you, Mr. Matityau Malka.

14           I want to be clear about this, because you've now

15 heard everything that your cousin has had to say about the

16 merits of the case, from his perspective at least, and maybe

17 it's your perspective, too, but also his position with respect

18 to the conditions, and I know I asked you this already, but I

19 want to be entirely comfortable and sure that I understand your

20 position.  And before you answer, you should talk to Mr. Vita,

21 but, again, I'm going to ask you the same question I asked you

22 earlier just to make sure that your position is no different now

23 than it was after you heard your cousin's presentation, and that

24 is, if I were to determine that these conditions proposed by the

25 Government are necessary in the Court's view to reasonably

Bail Hearing             USA v. Malka, et al.                    72

1  assure your appearance and the safety of any person or the

2  community, would you abide by those conditions.

3         Talk to Mr. Vita for one second and then let me know.

4         (Defendant consults Standby Counsel)

5         THE COURT:  Mr. Malka.

6         MR. MATITYAU MALKA:  Yes, your Honor, I just want to

7  make it one more time clear, that I know the Court has just

8  asked me a yes-or-a-no answer, but the thing I just -- I'm

9  adopting in all the arguments and the statements that my cousin

10 just did in full.  This is one thing.

11        And the other thing is that I'm -- because all the

12 arguments that we already did now, how much it's possible in

13 this short hearing even was one (inaudible) subpoena a few other

14 witnesses and few other people that will for sure show for the

15 Court that I am not a flight risk and dangerous for the

16 community, so one just...I was very much to make it clear to the

17 Court that even if it to be a $500,000 secure bond or other very

18 hard conditions that is not mention here that the Court can find

19 and to put it on me, I will obey it hundred percent and I will

20 not violate any state or federal or any kind of any law while I

21 am outside on bail, but just I think really what asking the

22 Court because I'm suffering so much, that right now I'm

23 incarcerated already here in jail over three years, and not just

24 I am suffering from that, the minors, so-called alleged victims,

25 also suffering so much from them.

1           And especially my family, my mother, my father, and my

2  wife and my children, they couldn't stop to cry, with their

3  eyes, of all the abusing that's going already over here, over

4  three years, from the Government and all the allegations what

5  they are bringing down to the Court, everything is just false

6  allegations based on newspapers and based of people they're

7  trying to shrink (ph) up some information and to send it to the

8  Government to prove our incarceration like Mr. Abraham Greenwald

9  and his, and his other people that he's helping out for this

10 reason, just to break down our community humanity and

11 physically, and I'm sure with the help of God, that the Court

12 hopefully will be able to put on me any other condition, even

13 500 secure bond -- $500,000 secure bond or more co-signers and

14 real property or even any other very hard condition, but just

15 here while I'm now in jail for the last three years, I was able

16 to talk to my whole community and I didn't violate any kind of

17 any rule and I didn't -- and I'm not kidnapping, I'm not attempt

18 kidnapping, nothing, any violation I didn't do.

19           So if I was in jail for three years and all the phone

20 calls is recorded and the Government have access to it and the

21 Government didn't found nothing that I was getting involved, so

22 why outside when my phones will be also recorded what can I do,

23 which kind of violation can I do more outside if my phone is

24 still the same recorded like jail and is sent directly to my

25 standby counsel, or if it's not an option, to Pre-Trial

1  Services, then they can have an option to review it one phone,

2  one computer, limited everything, I'm agree with that.  Even

3  against my mind I will obey it, but just...

4          THE COURT:  Let me just address a couple of those

5  points.

6          First, the circumstances are entirely different when

7  somebody is in jail versus out of jail in terms of what they're

8  capable of doing, because when you're in jail, you're in jail.

9  I mean, there's a fundamental difference between what you are

10  capable of achieving in terms of potential flight or potential

11  danger when you are not in custody.  It's just -- it's, it's

12  apples and oranges.  It's an entirely different analysis.

13  That's one point.

14          And the other point, and you've mentioned this a few

15  times now so I think it's worth just addressing briefly, the

16  idea that the phone calls are recorded and therefore there would

17  be some sort of investigative avenue available to the Government

18  after the fact to pursue whatever may or may not happen as a

19  result of those calls if they were for a nefarious purpose, it's

20  not as though Mr. Ligtenberg and Mr. Adams are sitting at their

21  desk listening to all of these phone calls.  That's not how it

22  works.

23          I'm not sure what you envision in terms of the

24  monitoring of these phone calls, but the Government doesn't have

25  the capability to be real-time monitoring every single phone

1  call that's being recorded from every criminal defendant that's

2  out there in the surround, that's just not how it works, so to

3  suggest that that alone is a sufficient backstop to address the

4  concerns that have been identified by the Government in this

5  case is just not accurate.  I understand the logic of your

6  argument to some extent, but I think it just -- it reflects just

7  a misapprehension of the resources and the capabilities of the

8  Government to a certain degree.

9         But, look, we're at the two-hour, two-and-a-half-hour

10  mark now of this hearing, we had a ten-minute recess at some

11  point earlier today, but it is time for me to make rulings on

12  these matters.

13         I did see at one point, just briefly, Mr. Mordechay

14  Malka, you seemed to be trying to get the attention of the

15  interpreter while your cousin was speaking.  Is there something

16  you need to ask him to make sure you understand what is

17  happening in this proceeding?  Please take a moment to confer.

18         MR. MORDECHAY MALKA:  Sorry.

19         (Off-the-record discussion)

20         MR. MORDECHAY MALKA:  It's a letter, your Honor, from

21  my five young children directly to the Court for today's

22  proceeding.  They wrote it.  It's directly in connection with

23  your determination regarding my release or not.  I feel I -- if

24  possible...

25         THE COURT:  It's a letter from your children?

```
 1              MR. MORDECHAY MALKA:  My five young children.

 2              THE COURT:  Asking for your release?

 3              MR. MORDECHAY MALKA:  Yes.

 4              THE COURT:  Okay, I certainly will take judicial

 5   notice of the fact that it will be your children's very strong

 6   preference to have you released, and as with many defendants who

 7   come before the Court on many different matters, the continued

 8   incarceration of a parent, loved one, sibling, child, close

 9   family relation is incredibly burdensome on a family.  I

10   understand that.  It is something that I think about in every

11   proceeding that I conduct from this bench.

12              With respect, it's not necessary for me to hear an

13   entire letter from your children.  I, I do appreciate -- I have

14   no difficulty appreciating the difficult -- the challenges and,

15   I'm sure, the absolute heartbreak that your family faces as a

16   result of your incarceration.  Regardless of whether you

17   ultimately are convicted of these crimes with which you are

18   charged or not, truly, it's undoubtedly an incredible burden on

19   your family, just as it is for criminal defendants in all kinds

20   of cases, so I don't need to hear that letter because I well

21   understand that issue, but I thank you for raising it

22   nonetheless.

23              Mr. Malka, Mr. Matityau Malka, I imagine the same is

24   true for your family as well, but go ahead.

25              MR. MATITYAU MALKA:  Sorry, your Honor, but just a
```

1  small thing for a minute.

2        Just my standby counsel already mentioned it in a

3  letter to the Court, I just want to refresh it one more time,

4  that even the -- of the previous trial that it was, that was

5  took away -- few seconds before the jury selection was took away

6  the pro se status of the two defendants, so their standby

7  counsels was not ready and to step in from a second to a second

8  to proceeding the trial, so the Government trying to bring up to

9  the Court a million of times that we already have in our hand a

10  convicted...cases for sure will get convicted where there's a

11  secure guilty plea, but at end of the day, the defendants who

12  was get convicted, they was not have the ability to...bring out

13  the evidence in the same way I am trying to do now, so if there

14  is not any possibility to make a continuing because we already

15  over two hours and a half, so I just want to say the conclusion

16  of Judge Román was when the sentencing guidelines, the other

17  defendants who was convicted was charged twice with parental

18  abduction and each one carries a maximum of three years, so

19  together is six years, but Judge Román con...

20        (Defendant consults Standby Counsel)

21        MR. MATITYAU MALKA:  He gave a concurrent sentence for

22  three years for those two same counts.

23        So I'm already here over -- almost -- over

24  thirty-seven months and I'm willing to obey every condition, and

25  I just hope that it would be possible to put any other condition

Bail Hearing                USA v. Malka, et al.                78

```
 1  that is possible -- if there's no any possible to have it
 2  continued, I really requesting to a continue, but if there is no
 3  any possible to have a continuing date so at least if it's
 4  probable to put any -- even a hard condition, a very hard
 5  condition, and I will obey it full, just to take away the
 6  condition about to violate my religion.
 7          THE COURT:  Okay.  I don't see that condition -- I
 8  mean, you keep representing it as the condition that violates
 9  your religion.  I don't see it that way.
10          And just to be clear, I've asked you this multiple
11  times, but that last statement makes me want to ask you one
12  final time, if I reject your request and impose the condition
13  that you feel imposes on your religion, would you still abide by
14  it even though you would be unhappy with it.  Would you still
15  follow it even though you'd be unhappy with it.
16          (Brief pause)
17          MR. MORDECHAY MALKA:  I really want to make sure to
18  the Court that I will obey every condition that the Court will
19  impose on me, I'll obey it full, but just this condition about
20  Lev Tahor, I'm really asking the Court if it's possible to put
21  something --
22          THE COURT:  I understand that you're asking that, I
23  really do, and, and defendants, usually through counsel, ask for
24  conditions to be dropped or modified all the time.  Okay, this
25  one is special to you because it's your case and your condition,
```

Bail Hearing                    USA v. Malka, et al.

```
 1  but it's -- as a concept, it's very familiar to the Court, okay?
 2  So I understand that you are asking -- and you've made many
 3  arguments that I've heard today for why that condition shouldn't
 4  apply.  I understand all of those arguments.  But if I reject
 5  the arguments and I choose to impose this condition, is it still
 6  true that you'll comply with all of the conditions?  Because
 7  that would be one of the conditions if I choose to go that way.
 8          Will you still comply with that condition.
 9          MR. MATITYAU MALKA:  I'll, I'll be able to obey every
10  condition that the Court will impose on me, but just this
11  condition, I'm really asking that --
12          THE COURT:  Mr. Malka, you have to be able to answer
13  this question without ending the sentence by saying "but."  You
14  have to either be able to answer the question by saying you will
15  comply, period, or "that condition is just too much and I can't
16  possibly do it, I can do anything else, but I can't possibly do
17  that," because if it's the second, you can't possibly do that,
18  then you might be in the same situation as Mr. Mordechay Malka
19  who has essentially said that he cannot comply with that
20  condition and that, much as he would prefer in a general sense
21  to be released, he can't abide by that condition and therefore
22  understands that if I were to deem that necessary, he would have
23  to go back to jail.
24          So this will be the last time I ask you to try to
25  answer this question cleanly and clearly, without saying "but,"
```

1 without a further argument about it: if I were to impose that

2 condition, meaning the condition that you cannot directly or

3 indirectly associate or have contact with any individual

4 currently or formerly associated with Lev Tahor except for those

5 individuals who you list for the Government and the Government

6 and Pre-Trial Services don't object to, if I were to impose that

7 condition, could you comply with it, yes or no.

8            MR. MATITYAU MALKA:  I don't see any way how I'll be

9 able because I'm believing that this is, this is harmed my

10 defense because I must prepare for trial and this will be hard

11 for my defense, so I don't see any way how I'll be able to be

12 prepare for trial by restricting not to talk to Lev Tahor, so I

13 don't see any way --

14            THE COURT:  You will have the ability to contact your

15 co-defendants and contact people from Lev Tahor in a restricted,

16 but not prohibited way.  I thought -- heh.  If the answer is you

17 can't do it, then that's the answer, but that's, that's not what

18 you've been saying for the last two hours.  That's not what Mr.

19 Vita represented that you were prepared to say here today.

20            This feels like we're going backwards, Mr. Malka.  It

21 feels like we're going back to where you were in October, and if

22 that's the case, then fine, but you have to be clear with me

23 about it now.

24            MR. MATITYAU MALKA:  I think I --

25            THE COURT:  But just to be clear, in October, before

```
 1  Judge Román, when he ultimately concluded that you had said you
 2  couldn't comply with the conditions, you tried to back away from
 3  that, despite everything that you had just said to Judge Román.
 4  I've given you many opportunities to be clear with me about what
 5  your intentions are, and so if you are going to say that you
 6  cannot comply with these conditions if I were to impose them,
 7  there's not going to be any going back.
 8          Because I really have been trying to give you every
 9  opportunity to let them know that you would be able to comply
10  with these conditions, that was my understanding coming into
11  this proceeding today, you've said that, in fact, at different
12  points during this proceeding, but here at the very last minute,
13  two hours and forty minutes into this hearing, you seem to be
14  hesitating, and so it's essential that I know now once and for
15  all so I can make a final, final decision, which you can then
16  appeal, but I need to know what your answer is to this question.
17          I'm going to give you thirty seconds to talk to Mr.
18  Vita just so it can be completely clear what the stakes are in
19  terms of the answer to that question.  Okay, do that, please.
20          (Defendant consults Standby Counsel)
21          MR. MATITYAU MALKA:  Your Honor --
22          THE COURT:  Hold on.
23          (Defendant consults Standby Counsel)
24          THE COURT:  Mr. Malka, Mr. Matityau Malka...
25          MR. MATITYAU MALKA:  Yes.  I think I cannot see any
```

```
 1  way how I'll be able.
 2           THE COURT:  You cannot see how you'll be able to
 3  comply with those conditions.  Is that what you're saying?
 4           MR. MATITYAU MALKA:  Just with this condition with --
 5           THE COURT:  Right, with the conditions that we've been
 6  focused on, about not contacting the co-defendants and not
 7  contacting Lev Tahor.
 8           MR. MATITYAU MALKA:  Yes, but beside that, every,
 9  every other condition --
10           THE COURT:  I understand that.  Okay.
11           Mr. Mordechay Malka.
12           MR. MORDECHAY MALKA:  Yes, your Honor, sorry.  I feel
13  there is left out, there is one point that's missing here that's
14  very important for the Court to know.
15           As I saw in the -- I mean, many cases, for example,
16  *United States v. Markier* (ph), Second Circuit, so it says that a
17  defendant is obligated to challenge the Government's proffer.
18  If he's not challenging it, it is accepted -- being accepted as
19  true, and, for example, saying *Markier's* failure to quote here
20  on page eleven --
21           THE COURT:  Mr. Malka, you don't have to quote the
22  case; you have absolutely challenged the Government's proffer.
23  You have.  There's no default finding here that the Government's
24  proffer is true because of a failure to challenge it.  That's
25  not the situation we have.
```

```
 1              I appreciate the point, I understand what that case is

 2  about, but you haven't sat quietly by and failed to challenge

 3  the proffer.  I have not allowed you to present all of the

 4  evidence that you requested to present in all of its different

 5  forms, but that does not mean that you have not challenged the

 6  Government's proffer.  You absolutely have challenged it.  That

 7  doesn't mean that I have to agree with your arguments either,

 8  but this is not a case where you've waived your arguments.

 9  Certainly.

10              MR. MORDECHAY MALKA:  Okay, I understand that, thank

11  you, Your Honor, but one thing on the other side is that one

12  point that I didn't make is the Government is obligated to prove

13  dangerous, dangerous by clear and convincing evidence, they --

14  this is their burden of proof, and --

15              THE COURT:  Well, I certainly understand that.

16              MR. MORDECHAY MALKA:  And, your Honor, my argument

17  will be not only they didn't prove it by clear and convincing

18  evidence, they didn't provide any evidence at all.

19              THE COURT:  Okay.

20              MR. MORDECHAY MALKA:  They're saying a speech or

21  providing a submission is not evidence, your Honor.

22              THE COURT:  I understand.

23              MR. MORDECHAY MALKA:  I did provide evidence and I

24  wanted to provide evidence.

25              THE COURT:  I understand all of that.
```

1          MR. MORDECHAY MALKA:  So --

2          THE COURT:  I do.

3          MR. MORDECHAY MALKA:  All right.

4          THE COURT:  Thank you, Mr. Malka.

5          MR. MORDECHAY MALKA:  Thank you, Your Honor.

6          THE COURT:  All right, Mr. Ligtenberg...I, I take it

7   that the Government's position here, having heard everything

8   we've heard for this lengthy hearing, is that the defendants,

9   Mr. Malka and Mr. Malka, are not prepared to comply with the

10  conditions that the Government has proposed if the Court were to

11  accept all of those conditions.

12          Is that right?

13          MR. LIGTENBERG:  Yes, your Honor.

14          THE COURT:  Okay.

15          All right, that's my understanding, too, based on the

16  various colloquies we've had here today, so let me go through

17  and issue my findings here today.

18          I'm going to start with Mr. Mordechay Malka whose

19  situation is a bit different because this is a first bail

20  hearing for Mr. Mordechay Malka.

21          Mr. Malka, in making a bail determination, I must

22  consider the following factors that I alluded to earlier: the

23  nature and circumstances of the offense charged, the weight of

24  the evidence against you, your history and characteristics, and

25  the nature and seriousness of the danger to any person or to the

Bail Hearing                    USA v. Malka, et al.                    85

1  community that would be posed by your release.

2          As you just pointed out accurately, the Government

3  bears the burden of establishing by clear and convincing

4  evidence that you are a danger to the community or establishing

5  by a preponderance of the evidence that you are a flight risk.

6  In this case, I find that the Government has met its burdens of

7  establishing that there are no conditions that I can impose that

8  will reasonably assure your appearance and the safety of the

9  community.  I make that decision based on all of the information

10 that has been presented to me, including the Pre-Trial Services

11 report, the arguments and information provided by Counsel and by

12 yourself in your pro se capacity, and in considering all of the

13 factors set forth in Title 18 U.S. Code § 3142(g).

14         The nature and circumstances of the offense charged

15 here are serious.

16         I understand that you, Mr. Malka, have a very

17 different view of what actually occurred in this set of

18 circumstances that led to the charges in the indictment, and I'm

19 sure that you will do all that you can to present those

20 arguments at your trial coming up next month, but the nature and

21 circumstances of the offenses charged here are very serious and

22 weigh in favor of detention.

23         The weight of the evidence against you as proffered by

24 the Government, you know, you've put forward a lot of arguments

25 as to why the weight of the evidence against you is not

Bail Hearing          USA v. Malka, et al.

1  particularly strong.  The Government takes the position that the

2  weight of the evidence is strong.  We have not engaged in a

3  lengthy recitation or presentation of evidence.  I've accepted

4  proffers from both sides about the weight of the evidence, and I

5  am not going to rely on the weight of the evidence as an element

6  of the decision here, although the fact -- despite your

7  arguments about what was and wasn't allowed to be presented at

8  the prior trial, the fact that there is a prior conviction of

9  co-conspirators in this case suggests that, at least with

10 respect to those defendants, the weight of the evidence was

11 strong, but, again, you have a presumption of innocence, you'll

12 be having a separate trial with a separate jury, and you'll be

13 entitled to your own determination from that jury as to your

14 guilt or innocence.

15          Ultimately, this is not a case where the -- turning to

16 history and characteristics, this is not a case where the

17 defendants have any criminal history, there's no indication of

18 participation in criminal activity while on probation, parole,

19 or supervision, but we do have some significant issues that come

20 up in the history-and-characteristics prong that weigh in favor

21 of detention.

22          Mr. Malka has limited ties to the United States, his

23 close family and religious community, as he's described, are

24 located abroad in Guatemala, the crimes at issue in this case

25 involve border crossings that, at least in the Government's

1  proffer, have not yet been completely understood.  There is some

2  indication/evidence here as part of this conspiracy about an

3  unwillingness to follow court orders or willingness to defy

4  court orders.  I do understand that there arguments about

5  whether those orders should come into play here or not, but

6  nevertheless, there is a lot here that points to risk of flight

7  for Mr. Malka.  The opportunity to flee, the availability of

8  communities abroad, all are factors that heavily weigh in favor

9  of detention on flight grounds.

10          Now, the fact that Mr. Malka came here voluntarily to

11  face trial is a fact that weighs in his favor on the

12  risk-of-flight grounds.  Yet, still, everything that I've heard

13  here today about his ties to his community in Guatemala and his,

14  his...lack of ties to the United States and the strong, strong

15  desire to be reunited with that community, very much weigh in

16  favor of detention, and the Government has certainly met its

17  burden to prove risk of flight by a preponderance of the

18  evidence.

19          I alluded to the sentencing calculations earlier as a

20  potential factor that would weigh against the flight

21  determination and that is a factor that I have considered.  The

22  fact that Mr. Malka has spent...years in prison or in custody

23  already pending these charges is certainly -- and the amount of

24  sentencing exposure that he faces, even if he is convicted, is

25  reduced by that reality.  However, the arguments about...well,

Bail Hearing              USA v. Malka, et al.                    88

 1  that's not enough to overcome all of the other factors that I've

 2  just alluded to with respect to the risk of flight.

 3          As far as danger to the community, there is a very

 4  strong insistence here by Mr. Malka that whatever happened with

 5  respect to the minor victims in this case was actually done for

 6  the protection of those minor victims.

 7          Now, how that will play out at trial is a different

 8  matter, but how that plays out from the perspective of danger to

 9  the community is it gives the Court great pause, to know that

10  there's at least an ongoing and, clearly, very strongly and

11  deeply-held view that the actions taken by the alleged

12  co-conspirators in this case were for the benefit of these

13  alleged victims, and it does strongly suggest that further harm

14  could come to those victims, potentially, if there were to be --

15  if Mr. Malka were to be released on, on...in this case.

16          What is unusual about this matter and what has been

17  the subject of most of our discussion here today is that the

18  Government has proposed a set of conditions that it believes

19  would be sufficient to ensure the appearance of Mr. Malka and

20  the safety of the community.  And those conditions are

21  undoubtedly strict, there's no question about that; I don't

22  think anyone would dispute that.  I don't think Mr. Ligtenberg

23  would even dispute that.  However, those conditions certainly

24  would have given the Court comfort that Mr. Malka could be

25  released and it would reasonably assure the safety of the

Bail Hearing                USA v. Malka, et al.

```
 1  community and Mr. Malka's appearance in court.  There is clearly
 2  a path forward to that here today, but Mr. Malka has made clear
 3  in his statements that he would not be able to abide by the
 4  conditions that were proposed by the Government, and the Court
 5  finds that those conditions would be reasonable conditions to
 6  impose, given all of the unusual facts and circumstances here.
 7          And Mr. Malka has said quite plainly that he would not
 8  be able to comply with those conditions and, in fact, it would
 9  be less onerous for him to remain in jail, you know, adding to
10  the list of things that I have not ever heard before sitting
11  here on the bench, that that's one of them, but that is clearly
12  Mr. Malka's firmly-held and honestly-held belief, and he's been
13  very candid with the Court about that and I respect the candor
14  at least.
15          So for all of those reasons, I find that there is no
16  condition or combination of conditions that I could impose that
17  would be -- that the defendant, Mr. Malka, would be able to
18  comply with that would reasonably assure the defendant, Mr.
19  Malka's, appearance and the safety of the community and
20  accordingly, Mr. Malka will remain in custody pending trial on
21  May 18th.
22          With respect to Mr. Matityau Malka, the determinations
23  have already been made as to Mr. Malka's...danger to the
24  community and risk of flight by both Judge Román and Judge
25  McCarthy.  I adopt all of those findings.  Nothing that has
```

Bail Hearing                USA v. Malka, et al.                    90

1  happened in the intervening months has changed any of those

2  factors that led both Judge McCarthy and Judge Román to conclude

3  that Mr. Malka, this is Matityau Malka, was a danger to the

4  community or his release would pose a danger to the community or

5  there was a risk that he would not appear for his court

6  proceedings.

7         Again, there is a set of conditions that the

8  Government has proposed.  This was true in the October 2021

9  hearing before Judge Román.  There was a set of conditions that

10 was proposed.  As was the case with Mordechay Malka, it is an

11 onerous and burdensome set of conditions.  However, these are

12 conditions that the Court would have adopted and would have put

13 in place for Matityau Malka and would have enabled Matityau

14 Malka to be released on bond.

15        An hour ago or so, I thought that Mr. Matityau Malka

16 was prepared to accept those conditions, not happily, not

17 willingly, but that he was certainly willing to abide by the

18 conditions despite his strong objection to them, but it is clear

19 from the latest colloquy that he is simply not prepared to

20 accept conditions with respect to contact with co-defendants,

21 being in the presence of standby counsel in a language that

22 standby counsel can understand, and limitations on contact with

23 members of the Lev Tahor community.

24        And so as a result of that, I must again conclude, as

25 Judge Román did before me, that because Mr. Malka is not

1  prepared to comply with these conditions, then I am not able to

2  authorize his release subject to these conditions because

3  there's no reason for the Court to believe that Mr. Malka would

4  comply with those conditions, and accordingly, having adopted

5  the findings of Judge McCarthy and Judge Román with respect to

6  risk of flight and danger to the community and understanding Mr.

7  Malka's continued unwillingness to comply at least with those

8  specific conditions that I've referenced, I am going to require

9  that he return to custody as well pending trial.

10         Of course, as we've talked about multiple times

11  throughout today's proceeding, both Mr. Malka and Mr. Malka have

12  the right to appeal this decision and seek further review of

13  this decision by Judge Román, and that application can be made

14  at the appropriate time.

15         All right, I believe that concludes our business here

16  today.

17         Mr. Ligtenberg, is there anything further we should

18  address now from the Government's perspective?

19         MR. LIGTENBERG:  No, thank you, Your Honor.

20         THE COURT:  Thank you.

21         Mr. Matityau Malka, is there anything further we

22  should address from your perspective today?

23         MR. MATITYAU MALKA:  Yes, your Honor.

24         THE COURT:  Briefly.

25         MR. MATITYAU MALKA:  Yes, I just want to ask the Court

```
 1   if it's possible to expedite this whole proceeding on transcript

 2   because usually we are waiting, like, four or five months for

 3   each transcripts and if it's possible to have it expedite in a

 4   few days?  Because --

 5              THE COURT:  Yes, that's a reasonable request, Mr.

 6   Malka.

 7              Mr. Ligtenberg, can the Government please order the

 8   transcript of this proceeding forthwith and have it turned

 9   around for delivery tomorrow?

10              MR. LIGTENBERG:  Yeah, assuming that works for --

11              THE COURT:  For the court reporter.

12              I mean, the earliest convenience possible for the

13   court reporter, which I think would be next day, which means

14   that the Government would have the -- should be able to have it,

15   assuming the resources are available from the court reporters to

16   have it prepared tomorrow.  It's a long proceeding and...there's

17   been a lot of talking, so it's possible that that might slip

18   till the middle of the week, but certainly this week, it should

19   be able to be provided to standby counsel.

20              MR. MATITYAU MALKA:  Thank you, Your Honor.

21              THE COURT:  Anything further, Mr. Malka?  At this

22   time?  Mr. Malka, is there anything else that you'd like to

23   raise at this time?  Matityau Malka?

24              MR. MATITYAU MALKA:  No, I just...

25              THE COURT:  Okay.
```

1              Mr. Mordechay Malka, anything further that you would

2    like to raise at this time?

3              MR. MORDECHAY MALKA:  No, thank you, Your Honor.

4    Thank you.

5              THE COURT:  Okay, thank you, everybody.  We'll stand

6    adjourned for today.  Stay safe and stay healthy, everyone.

7    Take care.

8

9    Certified to be a true and accurate

10   transcript of the digital electronic

11   recording to the best of my ability.

12   _____

13   Tabitha R. Dente, RMR, CRR

14   U.S. District Court

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25