# SUSAN C. WOLFE, ESQ.
Law office of Susan C. Wolfe
1700 Broadway, 41st Floor
New York, York 10019

Tel:   (917) 209-0441
Email:  scwolfe@scwolfelaw.com                              Diane Fischer, of Counsel

May 3, 2022

Hon. Judge Nelson S. Román
United State District Court
300 Quarropas Street
White Plains, NY 10601

Re:  *United States v. Helbran*, 19-cr-497 (NSR)

Dear Judge Román:

      Attached please find an outline of the bail arguments Mr. Malka will be presenting to the Court.  As standby counsel, I have been asked to convey that he has not been able to coordinate and transmit his additions, corrections and edits, but nevertheless requests that the Court consider it in connection with his bail review hearing.  In addition, since the government has filed it's letter only one day before the hearing, he has not seen it and will not be able to respond to it.

      Thank you for your consideration.

Very truly yours,

s/
Susan C. Wolfe
Standby Counsel for Mordechay Malka

**DRAFT**

Dear Judge Roman:

    Mordechay Malka submits, through standby counsel, the following summary of the arguments he will make and elaborate upon at the *de novo* bail review hearing on May 4, 2022.

1) He is not a risk of flight:

    A.    He returned to the United States voluntarily after he was indicted, wearing his usual attire, assuming that he would be arrested while passing through customs, and he was. That is not the behavior of someone who is a risk of flight.

    B.    He has in-laws and a cousin in the New York area. He has ties to the New York community. He is a United States citizen.

    C.    He has remained in jail for two years and nine months  He understood that being out on bail would mean that he could not prepare his defense with fellow *pro se* co-defendants because he would not be allowed contact with them. He seeks release on bail now because he needs access to a printer and email and internet legal research and the ability to communicate with people at all times and on a moment's notice. Currently, he is only able to receive digital materials he needs to prepare his defense by having them sent to the government who will send them to him, but only after reviewing them (the jail will only receive disks and hard drives from the government, who will not send them without reviewing them). Someone who stays in jail for almost three years when he is not facing much more time than that is not someone likely to flee.

    D.    In everything he has said and done for the last two years and nine months, he has demonstrated an unwavering commitment to defending himself, in this Court and on appeal, if that comes to pass. That is not the behavior of someone who is risk of flight.

2) He is not a danger to the community:

    A. He has no criminal record.

    B. The offense he is charged with is non-violent.

    C. There is no evidence that he has ever engaged in any form of violence.

    D. He is not a danger to anyone in the community and he is not a danger to the children the government calls victims. He will prove at the hearing, if permitted to call witnesses, that the critical events in this case did not involve any force or violence and that the purpose was always and only to alleviate the anguish of a child who had cried out for help.

DRAFT

3)  The conditions are not necessary to ameliorate a non-existent risk of flight and an absence of danger to the community and they violate Malka's First Amendment Right to Association with members of a religious community

    A.  The bail statute provides that a person released shall be "subject to the least restrictive further condition, or combination of conditions."  The combination of conditions proposed by the government is, instead, the most restrictive.

    B.  Not only does the government propose strict home confinement, but they also propose conditions that would prohibit contact with co-defendants, witnesses and with anyone "associated" with Malka's religious community, a broad category that would include every, man woman and child.  The government has refused to provide a list of people with whom Malka should not have contact, and, as such, has not identified any basis for reasonable suspicion that contact with any specific individual would pose a risk of flight or danger to the community.  Instead, the government proposes to prohibit contact with a category of people whose common link is their religion and their religious practices.  In addition, since the government first espoused this condition, three defendants that the government may have been primarily concerned about have been arrested and are in custody at the Westchester County Jail.

    C.  A condition that limits the freedom of association based on religion is unconstitutional.  In *United States v. Arzberger*, 592 F. Supp. 2d 590, 603-04 (S.D.N.Y. 2008), the court summarized the First Amendment principles applicable in the pretrial release context, which are stronger than those applicable in the post-conviction context:

> The last condition requested by the Government -- an order forbidding Mr. Arzberger from having contact with any witness -- implicates the First Amendment right of association. "[O]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." *National Association for the Advancement of Colored People v. Claiborne Hardware Co.,* 458 U.S. 886, 933 [] (1982) (footnote omitted).  The most natural privilege of man, next to the right of acting for himself, is that of combining his exertions with that of his fellow creatures and of acting in common with them. The right of association therefore appears to me almost as inalienable in its nature as the right of personal liberty. No legislator can attack it without impairing the foundations of society. 1 Alexis de Toqueville, Democracy in America 203 (Phillips Bradley ed. 1954) (quoted in Claiborne Hardware, 458 U.S. at 933 n.80).
>
> However, "[t]he Supreme Court has held that, consonant with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association." Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (2d Cir. 1996) (citations

2

omitted). Thus, "[t]o be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" Id. (citations omitted).

Associational rights could not be more directly affected than they are by the Adam Walsh Amendments: a person accused of certain crimes is categorically prohibited from any contact with a class of individuals. This is not the kind of incidental impact that courts have found to be insufficient to implicate the First Amendment. *See, e.g., Lyng v. United Auto Workers*, 485 U.S. 360, 365-66 [] (1988) (finding refusal to provide food stamps to striking workers not violation of associational rights); *Connecticut State Federation of Teachers v. Board of Education Members*, 538 F.2d 471, 481 (2d Cir. 1976) (holding that state did not violate association rights by denying teachers' union access to school mailboxes, bulletin boards, and meeting rooms). Indeed, in the one case to address associational rights in the context of a bail condition prohibiting the defendant from contact with a class of persons (in that case, convicted felons), the court vacated the condition precisely because it was imposed uniformly and without consideration of whether it was necessary in light of the defendant's individual circumstances. *United States v. Spilotro*, 786 F.2d 808, 815-17 (8th Cir. 1986).

There is thus a protectible liberty interest at stake. As in the preceding analyses, that interest is substantial; defendants are likely to be erroneously deprived of the First Amendment right of association in the absence of an individualized determination of the need for a no-contact order; the marginal burden of providing the additional due process is minimal; and the Government's interest in protecting witnesses, while plainly significant, is not inconsistent with a particularized determination of the danger posed by the defendant. Accordingly, the Adam Walsh Amendments are facially unconstitutional to the extent that they automatically require the imposition of a no-contact condition, and the Government's request that such a condition be required here is denied.

*See United States v. Spilotro*, 786 F.2d at 816-17 ("The association condition at issue here is a condition of *pretrial* release. For this reason, the cases upholding conditions which restrict the freedom of association of persons who are incarcerated or who have been conditionally released following conviction are not dispositive" and "any condition restricting association should be limited to only that necessary to assure the individual defendant's appearance when required in the district court").

3

**DRAFT**

4) Mr. Malka's due process rights are violated by continued detention. The proposed conditions unconstitutionally undermine Mr. Malka's right to self-representation: unlike the other federal detention centers in New York, Malka does not have access to a printer so that he can print documents he drafts on his computer and revise and edit them and send them to counsel. The other federal facilities also have email so counsel and his wife, who assists him, can inform or update him in real time. And like other federal inmates, he doesn't have a tablet which state inmates are given (it is planned that all state inmates will have tablets in the near future). In order to make submissions to the court he must dictate them over them phone and revise and add to them when they are read back to him. There are a myriad of other things he can't do or prepare for counsel to do while incarcerated at the Westchester County.

5) His prolonged detention of two years and 9 months is extraordinary and unconstitutional  He has done 33 months (with good time, approximately 39 months) and his guidelines, according to the government, are 46 to 57.

6) He wishes to be clear that he will not violate any conditions the court imposes. Should the court impose the no-contact conditions the government requests, he will have to choose between posting bond with his co-signers and conforming his conduct to those conditions, or not posting bond and staying in jail where he is not subject to those conditions.

4