May 4, 2022,
Supplement to:
Reply to the Government's opposition to motion in limine
By pro se defendant Matityau Malka

Hon. JUdge Roman,

Before I go into details of this supplemement, I must first protest again on the constitutional violations going on in this case: turning a blind eye again and again to those cryouts does no negate their existence and certainly does not diminish their relavance and the necessity for relief. I would however, not discuss here all the violations, since if I would do so, this letter would be of significant volume, I will only point out to one of the many which is highly relevant to this supplementy

AS I already explained in the introduction of my motion in limine (see ECF no. 506), the Government went above and beyond to prevent us from preparing a defense, already since the first day that we requested to proceed pro se, and much more since we were granted pro se. While the Court ordered that we get several means for our defense preperation, the prosecution team moved behind the scenes and ensured that we should not receive most of them and that the ones received should be in such manner that it is not helpful at all. When we confronted the Government during the subsequent hearings regarding our lack of means to prepare our defense, the Government brazenly lied that we did receive all the means.

When we cried ourt out again to the Honorable Court and proved that we do not have adequate access to the court and minimal means for our defense (see for example ECF. no. 320, 320-1, 320-2 and 349-1), the Government then shifted gears and advised us to enlist third parties to prepare our motions, a cynical and brazen violation of our f rights (see Farreta v. California 422 U.S. 806, 95 S. Ct. 2525, 1975), I discussed already this violation in the introduction to my motion in limine 9 (See ECF no. 506).

But the brazeness of the prosecution team knows no limins; even when we tried to get along with this violation and attempted to utilize third parties for our defense preperation, the Government used extreme tactics to make this ultimate resort also unavailible. And I would detail in short:

The first attempt to use third parties for motions preperations was by rabbi Helbrans back in March 2021, he used the help of Yakev Weingartedn to draft a motion via screen-sharing technology on the tle-visit system of the jail. Mr. Weingarten was then in Guatemala. The Government got aware of these tele-visits (the Government even later introduced the recordings of those tele-visits in the discovery), and moved haven and earth that Yakev Weingarten shold be arrested for the charged in the indictment; and just a few days later, Yakev was arrested through a massive raid in Guatemqan Guatemala joined by US officials. Yakev then remained incercerated in Guatemala awaiting extradidion.

Rabbi Helbrans then tried to use the help of Shmiel Weingarten an and just a few days after drafting a new motion Shmiel was also arrested in a same style raid.

Rabbi Helbrans then tried to obtain help from another individual in Guatemala, this time the Government contacted the Westchester County Jail and requested that we should be prohibited from using the screen sharing during the tele-visits, as such our hands were from there on tied up.

When the trial of Rabbi Herlbrans and Rabbi Rosner drew closer, the Government requested from the jail that we the other co-defendants should be isolated and locked up in the SHU, so that we cannot help thenm to prepare for trial, let alone to testify f for them at trial (see page 64-66 of my reply). We were kept ther exactly until after their trial/.

After their trial, when we started to prepare for the trial of Mordechay Malka and Jacob Rosner (I was not yet shhd scheduled to be tried together with them, the Government then suddenly moved Jacob Rosner to another jail in New jersey to hamper yet again our defense preperation.

When we turned to the Weingarten's for help to prepare for trial, they were unreasonably placed in an isolation unit for 30 days in the Guatemalan jail, the jail administration told them that this was per the instnuctions of the US authorities and even extended them a letter afterwords confirming that there was no reason behind their isolation and that it was an illegal and inhu-man act
(See exhibit A)

When the Court all of a sudden scheduled that I should be tried together with Mordechay Malka, resulting that I had only a few days to prepare my motion in limine, I asked again assistance from the Weingartens, since although they were being held in a third-world-country prison, they were still provided there much more defge defense means then I was provided and restricted here, namely with fattered Internet access for legal research and communication, a computer with functioning ports to transfer and print documents. Perhaps the corrupt Guatemalan government is not so much corrupted as the prosecution team in our case.

We started to work together over the phone, and indeed this motion in limine was the first somehow useful motion that we could submit
:

Although we had over 100 arguments, we succeded in bringing out less than a dozen of them. I must express here again, that having over 100 argunments does not make any of them less important of less relevent, still I felt that part of my argument were partially raised.

We then started to draft my response and reply for the government but with extreme difficulties, since the government, as always in this case, made a hodgepodge of highly manipulated and twisted citations, we had to dedicate several pages for each citation to unfold the governments lies and deceptions. We worked against the clock, attacking the overwhelming manipulations of the government. I could not have a chance to overview completely my reply to see if it contains no errors and if there is not missing critical details overthere. With the last breath my reply was filed on the deadlin e, on April 15, 2022, two hours before the passover began. As we are prohibited from using technology in the passover holiday we agreed between us to review together the reply agian after passover.

However, the Government could not rest when they kiwow that we ha ve some access to help, as such, on the fourth day of passover, the Weingarten brothers were illegally extradited in rush from Guatemala to the US, despite that there was a stay agianst their extradition (called an amparo), when their lawyers in Guatemala tried to fight the sudden illegal extradition, they were told that nothing would help to stop it, since the US government asked for a quick under-the-table extradition, (see exhibit B) from there on I lost contact with them, I had no way to review my reply, I lost access to my witness lists, exhibits for trial and whatnot, I had to start everything from scratch.

The evilness of the government is not shocking anymore, it is their common practice in this case backed up fully by this Court. Cryigg out agian and again might seem fruitless, but at least I a am doing my part and God willdo the rest, The governments brazen tactics to prevent me form preparing a defense and their attempts to silence me would not succeed forever.

Going forward, I struggled to get a copy of my reply so I could review it, but just on Wednesday of the past week I got a copy by mail through my stand-by council.

While my reply covers somehow some of my arguments, I saw that at least two arguments which were about to be included in my reply were omitted, apparently the Weingartens did not have a chance to review them again with me and therefore they were not included in the reply, however, the Governments evilness would not break me and I would address at least those two arguments in this supplement to my reply.

Argument 1:

The Honorable court should deny the Government's request to prohibit us from eliciting testimony and intooduce evidence in re- gards to prior bad acts of the mother and Kasho members.

The relevence of these facts is highly critical. First, the fact of the mother kidnapping the children from Guatemala, would demonstarte the mother's lack of lawful parental rights during the period charged in the indictment. Second, the violent and criminal acts by the mohher and her bad behavior, and horrific abuse that she made her children suffer, in the weeks prior to the December 2018 rescue operation, and even after that, are of critical importance, namely to prove our lack of obstructive "intent" and prove that there was only ONE intent, that being: to rescue victims and nothing more. Third, these facts are also here to prove the affirmative defense of "fleeing an incident or pattern of domestic violence." Fourth, the facts of the mothers frauds to obtain the ex parte emergency custody order are highly relevant to prove the lack of jurisdiction of these court orders (see for example argument B(3)(IV) in my reply, begining on page 211) and therefore the lack of her parental rights through these orders; furthermore, these facts about her frauds would also shed light on her credibility as a witness.

In the same token, the bad acts of Kasho members against Lev Tahor in general and against Y.T. and C.T. in particular, as well as their bad acts of the past decades, should also be admisable, since the fact of the mather's partnership with this individuals with intention to harm her children, and her knowledge of their hate towards the children, their family, and the Lev Tahor community and she still intentionally handed over her children to be victims of these Kasho members, and furthermore, the facts of the illegal acts by these individuals to manipulate the legal system, are all critical to demonstrate and prove the three critical points mentioned above, that being: 1) the mother's lack of lawful parental rights, 2) our rescue intent and lack of obstructive intent, and 3) the existence of the affirmative defense of domestic violence.

Therefore, the Governments request must be denied.

Argument 2:

The Government seeks to preclude us from arguing and introducing evidence of the past and current persecution by the US and Isreal Governments against Lev Tahor. The governments request should be denied.

As the second circuit ruled in US v. Quattrone, 441 F.3d 153, 188 (2nd Cir. 2006): "so long as a chaim of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."

Further in US v. Ravish, 421 F.2d 1196, 1204 n.10. the Second Circuit reuled: "The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved... does not render the evidence irrelevant."

In our case, the chain between the evidence of the persecution and the facts of this case are not long at all; in fact they are undoubtly connected and intewinded to such extant that precluding such evidence would highly jeopardize the defense. I could not, in this short letter, list all the relevance, but I would give some examples.

The persecution facts would shed a light on why the children were kidnapped illegally from Guatemala with the help of the US Goverment; why US authorities turned a deaf ear to the childrens' cryouts; why the children were not protected by the ACS; Why did a New York family court issue invalid orders; why was the father prevented from defending his childrens' rights in court; why did the children have to escape from the US, and many more questions; an essential part of the answers to those questions and others lays in the

page 5 of 8

facts and evidence. Therefore they could not be precluded.

And there is another simple reason why these facts must be addmisable, and it is at follows:

The anti-semitsm and religious persecution in this federal case is so evident that too much examples here in this letter are not required. Starting from labeling the December 2018 rescue operation as a "terrifying kidnapping" in their press rele (it was the first time in the US history that the term "terrifying" was mentioned in a USDOJ press release i connection with a kidnapping case. "Terrifying" does not appear even in real kidnapping cases which ended up in the victim being raped and murdered through painful and sadistic methods. However, when it comes to Lev Tahor, helping and rescuing an abused runaway child, becomes a "terrefying kidnapping", not persecution?), going up to the hateful testimony of the Government's CW durring the trial of Rabbi Helbrans and Rabbi Rosner, a testimony that was practically just a recital of defamation on ancient Jewish laws governing marital relations and family purity. Nothing in his testimony could be claimed to be rules of Lev Tahor, rather, they are laws codified in Jewish law books already thousends of years, and are practiced in the same

exact manner by millions of Jewish as of today. There was no reason for testifying about that if not to appeal to anti-Semitsm. Indeed, hate is a great trick to secure a conviction. And anything in between the anti-Semitic press release and the hateful testimoney, all what the Government said and wrote are not of too much better. All their letters, motions and statements are packed and stuffed with anti-Semit and hatred. I cannot refer here to all the details, since I would technically need to copy and paste all their infamous filings in the docket.

When religious persecution exists, there is no point for precluding evidence of such; beside of its connection to the facts of the case, there is also another highly relevant reason, the jury must be aware of the persecuti in order not to become anti-semitic like the prosecution, persecution team.

As such, the evidence and arguments in regards to the persecution are highly relevant and critical, and therfo the Government's request must be denied.

In the same manner, the Government should be precluded from mentioning anything in regards to Jewish law and practice of marital relations and family purity (see argument D(1)

of my reply, starting on page 309).

All other requests of the Government should be denied for the reasons set forth in my reply.

respectfully submitted
by pro se defendant Matityau Malka
M. MALKA

Joined by pro se defendant Mordechay Malka
M. M.

List of exhibits

Exhibit A - Letters by the administration of the Guatemalan jail confirming the illegality of the 30 day isolation of the Weingartens on the request of the US Government (due to my restrictions I might need to file this exhibit later, however, I will try my best to file it together with this letter).

Exhibit B - Haebas corpus requests made hours before extradition of the Weingarten's, crying out for the illegality of the Scheduled sudden extradion all while there is a stay active by the supreme court of Guatemala.

Page 8 of 8