# SUSAN C. WOLFE, ESQ.
Law office of Susan C. Wolfe
1700 Broadway, 41st Floor
New York, York 10019

Tel: (917) 209-0441
Email: scwolfe@scwolfelaw.com  Diane Fischer, of Counsel

May 23, 2022

*Via* email: Gina_Sicora@nysd.uscourts.gov
Hon. Judge Nelson S. Román
United State District Court
300 Quarropas Street
White Plains, NY 10601

Re: *United States v. Mordechay Malka*, 19-cr-497 (NSR)

Dear Judge Román:

      I write as standby counsel to *pro se* defendant Mordechay Malka. I have discussed the subjects addressed in this letter with Mr. Malka and he has provided me with information that he would like to convey to the Court. In my capacity as advisor I have also suggested areas that it would be useful for him to cover.

      The primary purpose of this letter is to explain Mr. Malka's confusion regarding the Court's decision on motions in limine and to make sure that the preview he intends to give the jury in his opening is consistent with the parameters the Court has set. He can assure the Court that he intends to abide by the Court's rulings and if he oversteps – it is not always easy to discern where the lines are [even for lawyers] – a simple "sustained, move on" will be all he needs.

      The very first words uttered the prosecutor's mouth in her opening were: "[t]his is a case about a parent's worst nightmare. About a mother [who] who woke up one morning to discover that two of her children . . . were missing." It was designed to evoke an emotional response out of the gate, and it had that effect Mr. Malka. Following the government's example, he started to relate the children's nightmare, about which the daughter has already testified --- a series of foster homes, starting with one in Mexico when she was separated from her father, and in a hospital, not wanting to live with her mother, wanting to go home to her father and her community, feeling isolated and alone. *See e.g.* Tr. 1388-1399.

      On page 36 of its decision, the Court ruled:

> . . .insofar as the Malkas seek to broadly introduce evidence of the "bad character" of the Mother or any of her alleged collaborators that is not directly related to their treatment of the Minors or the offenses charged in this case, that evidence is irrelevant to the issues on trial and will not be permitted.

Mr. Malka reasonably understood this ruling to mean that evidence "directly related to [the] treatment of the Minors" by the mother and her collaborators is not admissible. Other evidence of bad character would not be.

In addressing the second affirmative defense under the statute, the Court ruled that, "*absent any evidence supporting their claims of abuse* [that they were helping the children flee from domestic violence], they still cannot assert that defense or argue it to the jury." Mr. Malka understood that to mean, if he has evidence of domestic violence, he *would* be able to argue it to the jury. Specifically he can point the Court to a summary, produced in discovery, of a four-page letter describing the abuse the daughter suffered. The reader (summarizer) describes her letter as "a harrowing account of forcible removal of herself and siblings by child protection authorities and being placed "cruelly" in frighteningly strange surroundings." A copy of the summary is attached hereto. Quotes from and references to the letter were contained in the defendants' reply memorandum in support of his motions in limine.

Although the Court stated that the domestic violence defense "seems to be limited" to physical abuse, *id*. at 39, it is difficult to see how that could be so. On the New York State Unified Court System web page titled "Domestic Violence Basics," it says that domestic violence "may be physical abuse. But, it does not have to be either. A victim can be controlled or terrorized by many different tactics like emotional abuse, economic abuse, physical abuse, and threats and intimidation." https://nycourts.gov/CourtHelp/Safety/DVbasics.shtml. The conditions the daughter described in her letter satisfy any definition of domestic violence. In anticipation of introducing such evidence, Mr. Malka understood that he was acting within the parameters of the Court's decision

Finally, the Court has ruled that the government may offer evidence of underage marriage, something that is easily the most inflammatory evidence in the case and that people have a visceral reaction to. The government says that the evidence is direct evidence of the crime charged. That crime, which the Court has not yet read to the jury is, removing or attempting to remove a child from the United States, with intent to obstruct the lawful exercise of parental rights. While evidence of underage

Hon. Nelson Roman
May 23, 2022
Page 3

marriage may explain why the mother took the children from their home and their father in Guatemala, it is not evidence of any of the elements of the offense, especially in light of the Court's ruling that the defendants cannot challenge the elements of lawful exercise of parental rights.

    If the government is allowed to introduce highly prejudicial evidence to explain why the mother took the children, the Court should similarly allow the defendants to explain why the defendants sought to help the children return. The evidence of what the children endured when they were taken away from their father and placed in a series of fosters homes in a strange country, separated from both parents, and from friends and relatives, is important background evidence that completes the story and it will also be offered as evidence of the defendants' intent. The daughter testified about the same events in the Helbrans trial and she will, presumably, give similar testimony at this trial. While the government claims that the evidence admissible in the Helbrans trial was different because of the exploitation charges, the government has injected the same element into this trial with evidence of underage marriage.

    Mr. Malka seeks to preview in his opening the complete story, starting with a father's nightmare when he woke up and four of his children were gone and then two were taken from him in Mexico, followed by the children's nightmare as summarized in the document attached. This is evidence "directly related to the treatment of the Minors," and was not excluded by the Court's decision. *Id. at 36.* It is also evidence of abuse and that Mr. Malka was helping the children flee from domestic violence. Mr. Malka contends that, through this evidence, he will be able to establish that his intent was not to obstruct the mother's parental rights. That is a question for the jury to decide. Without that evidence the jury will hear only a small slice of the events contoured by the government's theory of the case and the result will be tantamount to a directed verdict for the government.

    Mr. Malka respectfully requests that the Court permit him give an opening statement based on the evidence he expects to produce through cross-examination and defense witnesses, including his own testimony.

                                            Respectfully,

                                            MORDECHAY MALKA

                                            By: s/ Susan C. Wolfe,
                                            Standby Counsel